10/19/2022     USA v. STROM      21-10068-1     1

```
 1              IN THE UNITED STATES DISTRICT COURT
                       DISTRICT OF KANSAS
 2

 3  THE UNITED STATES OF AMERICA,

 4              Plaintiff,

 5       vs.                        District Court
                                    Case Number
 6  DUSTIN KENNETH STROM,           21-10068-01
    THOMMIE-LYN STANSKY,            21-10068-02
 7
                Defendant.
 8

 9                 TRANSCRIPT OF PROCEEDINGS
10

11       On the 19th day of October, 2022 at 1:35 p.m. came
    on to be heard in the SENTENCING HEARING in the
12  above-entitled and numbered cause before the HONORABLE
    JOHN W. BROOMES, Judge of the United States District
13  Court for the District of Kansas, Sitting in Wichita.
            Proceedings recorded by mechanical stenography.
14          Transcript produced by computer.

15

16  APPEARANCES

17          The Plaintiff appeared by and through:
            Mr. Jason Hart
18          Ms. Molly Gordon
            United States Attorney's Office
19          301 N. Main, Suite 1200
            Wichita, Kansas 67202
20
            The Defendant Kenneth Strom appeared in person, by
21  and through:
            Mr. David Freund
22          Federal Public Defender's Office
            301 N. Main, Suite 850
23          Wichita, KS 67202

24

25
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

        The Defendant Thommie-Lyn Stansky appeared in
person, by and through:
        Mr. Tyler Emerson
        Conlee Schmidt& Emerson, LLP
        200 West Douglas, Suite 300
        Wichita, KS 67202

10/19/2022      USA v. STROM      21-10068-1      3

```
 1          (The following proceedings commenced at 1:35 p.m.
 2  and have been requested transcribed:)
 3          THE COURT:  We're here on Case Number 21-10068,
 4  United States versus Dustin Kenneth Strom and Thommie-Lyn
 5  Stansky.
 6      May I have appearances, please.
 7          MS. GORDON:  Good afternoon, Your Honor.
 8      Molly Gordon and Jason Hart on behalf of the
 9  United States.
10          THE COURT:  Thank you.
11          MR. FREUND:  Good afternoon, Your Honor.  Dustin
12  Strom appears in person and with counsel David Freund,
13  Assistant Federal Defender.
14          MR. EMERSON:  Good afternoon, Your Honor.
15  Defendant Thommie-Lyn Stansky appears in person, by and
16  through counsel, Tyler Emerson.
17          THE COURT:  Thank you.
18      Mr. Strom, can you understand everything that is
19  being said in the courtroom today?
20          DEFENDANT STROM:  Yes, Your Honor.
21          THE COURT:  Ms. Stansky, can you understand
22  everything that is being said in the courtroom today?
23          DEFENDANT STANSKY:  Yes, Your Honor.
24          THE COURT:  This matter comes on today for
25  sentencing.  We are taking both defendants in the
```

1  courtroom in this case at the same time.

2      I received an email from the parties indicating

3  that for the sake of going through some of the common

4  material in the case and hearing from the victims that

5  the parties either agree or there are no objections to

6  the idea that given the difficult nature of some of this

7  material, it would be best for everyone involved,

8  including the victims, to try to go through it once.

9      I understand that I am to sentence each of these

10  defendants individually, so I will hear this

11  material -- common material one time with respect to both

12  of them, but the defendants will each have the

13  opportunity to have their attorneys speak, and for them

14  to speak and to present whatever information they want to

15  present to have their sentences determined individually,

16  and I will fulfill my responsibilities to separate these

17  matters out as to each defendant and to ensure that each

18  of them gets an individual sentence based on their own

19  conduct that's appropriate to consider in this case and

20  they will not just be sentenced based on what the other

21  defendant might have done.

22      I understand we have a couple of people who are

23  appearing or listening in over Zoom and I believe those

24  are both victims or victim representatives who will get

25  an opportunity to listen to the proceedings, as well as

1   to speak at an appropriate time.

2       There any questions or concerns about the format

3   of how we're proceeding today?

4           MS. GORDON:  No, Your Honor, thank you.

5           MR. FREUND:  No, Your Honor.

6           MR. EMERSON:  No, Your Honor.

7           THE COURT:  All right.  Are there any

8   preliminary matters or anything else we need to take up

9   before we proceed to the sentencing process?

10          MR. HART:  Your Honor, as a preliminary matter I

11  know it's the Court's custom to inquire if victims have

12  been notified who may be seeking restitution.  We have

13  done those notifications to the extent we have identified

14  individuals, so we have complied with that.

15      As it relates to the issue of restitution as we

16  identified in our sentencing memorandum, we would request

17  pursuant to 18 U.S.C. 3664(d)(5) that the Court bifurcate

18  the restitution portion of the sentencing hearing to a

19  later date.

20      I would note that there is a third defendant

21  associated with this case who would have some involvement

22  in the restitution issue, Mr. Dillon Everman.  It would

23  be appropriate I think to do those -- that restitution

24  hearing sort of all three, that portion all at once,

25  because I would anticipate the Court would impose it as

1  joint and several.

2      I would also advise the Court that because our

3  recommendations related to the assessments that the Court

4  might impose pursuant to 18 U.S.C. 2259(A) are frequently

5  contingent upon what the Court contemplates as

6  restitution, we will be making a request, and I'll make

7  it right now so the Court has it, we're requesting that

8  the Court impose an assessment of $50,000, which is the

9  maximum under the Andy -- the Amy, Vicky and Andy -- it's

10 the AVAA, the Amy, Vicky and Andy Child Pornography

11 Victims Assistance Act.

12     We have requested the Court impose the maximum,

13 which would be 50,000 per count, which reflects 50,000

14 per victim for both defendants, each of them then

15 receiving $100,000 assessment.  We may revisit that at

16 the restitution hearing, which I think the Court could

17 then amend that but that is going to be our request right

18 now in the absence of any restitution request that we

19 might receive later.

20     Does that make sense to the Court?

21        THE COURT:  Yes.

22     I guess in evaluating those assessments are those

23 made on a victim basis or on a defendant basis?  I

24 thought it was a defendant basis?

25        MR. HART:  I believe it's on a per count basis

1  and I think I had some conversation with Ms. Clark on

2  this because she had the same question.

3       My memory is it's per count and I can look at that

4  again real quick.

5       THE COURT:  That may be true but in other words

6  we're going to make determinations for that assessment as

7  to each defendant, probably on a per count basis --

8       MR. HART:  Correct.

9       THE COURT:  -- but it won't restrict the

10  total -- well, how do I say it?

11       I don't know how much of that assessment, if any,

12  necessarily flows to any specific victims so I don't know

13  how that -- whatever I heard you say there about so much

14  per victim, I'm not exactly sure what you're telling me.

15       MR. HART:  Your Honor, what the $50,000

16  assessment is designed to do is it's an assessment that

17  is imposed upon the defendants.  That money from that

18  assessment then goes into what would be the fund, which

19  is sort of a pot of money for victims to make a claim to

20  at some later date if they don't make an initial claim in

21  either their production case or in the later distribution

22  cases.

23       The statute contemplates a one time distribution

24  or one time request by victims.  By virtue of the fact

25  that we have very young victims, I don't know if they're

1  going to make a request now, it's been my experience that

2  frequently victims don't make requests because it's just

3  drinking water out of a firehouse, for lack of a better

4  word, and there's a lot of crisis management they're

5  doing, but they may want to make one later and so the

6  assessment is designed to allow that to happen.

7       If we do have restitution requests then that may

8  affect whether or not we request that level of

9  assessment.  What I am trying to forecast to the Court is

10  the issue of assessment.

11       We are right now requesting the maximum but we may

12  amend that at the restitution hearing or recommend

13  amendment if there is for some reason a restitution claim

14  that we think addresses those issues.

15       Does that make sense?

16            THE COURT:  Yes.

17            MR. HART:  Okay.  I think with that preliminary,

18  Your Honor, that's the only issue that the Government

19  has.

20            THE COURT:  Are the three contact victims that

21  are associated directly in this case, do they all have

22  someone looking out for their interests in the context of

23  restitution?

24            MR. HART:  We have had that discussion with the

25  guardians or custodians for each of those children.

1          I would note as it relates to the third contact

2    offense victim, we've had that conversation and sent

3    victim -- I believe victim compensation paperwork to them

4    even though they're not part of this case so that they

5    can maybe begin that process.

6          And just so the Court is aware, that process was

7    actually undertaken by that particular custodian and

8    there has been no request for restitution from that

9    particular custodian.

10          So I think the Court's question, if I am

11    understanding it, are their interests represented?  We

12    believe they are, so we'll be able to get that

13    information going forward.

14          THE COURT:  Very well.

15          Last question on this that I have at the moment,

16    under 18 U.S. Code 3664(d)(5) provision that authorizes

17    me to take up restitution later it says, in relevant

18    part, that if the victims' losses are not ascertainable

19    by time prior to sentencing, then the Court should set a

20    date for the final determination of the victims' losses

21    not to exceed 90 days after sentencing.

22          And so the timeline for that hearing, if we were

23    going to do that with all three defendants in this case,

24    does the 90 days run from today when these first two are

25    sentenced, or does it not begin to accrue until the third

1  defendant is sentenced?

2          MR. HART:  Your Honor, I read it and I read it

3  to be 90 days from today's date as it relates to these

4  two defendants.

5          I anticipate we'll have a figure for the Court

6  before Mr. Everman's sentencing, which I believe is about

7  a month away, if my memory serves.  But I think the way

8  that I read the sentence, it's per sentencing for each

9  defendant so I take it to be 90 days from today.  For

10  these two defendants.

11          Mr. Everman would then have I guess an additional

12  30 days beyond it once he is finally sentenced.  But I

13  expect we'll be well within that time frame.

14          THE COURT:  Okay.  Joyce, give me a date 80 days

15  from today so we have some time if we don't get it done

16  straight away.

17          You can look at that, I'll set the date later.  I

18  didn't mean to put you on the spot now while you're

19  sorting through the calendar.

20          So let me just turn to defense counsel.  The

21  Government's asked me to delay restitution proceedings

22  pursuant to 18 U.S. Code 3664(d)(5) to not later than 90

23  days from today, and you've heard the other information

24  Mr. Hart has provided on that topic.

25          Do either of the defendants disagree with that or

1  are you fine with me setting separate restitution

2  proceeding about -- I'm looking for a day about 80 days

3  out so if we have any scheduling snafus we have a week to

4  ten days to get them in before we would run beyond the

5  deadline.

6         MR. FREUND:  Your Honor, as part of this plea

7  agreement Dustin agreed to pay restitution as set by the

8  Court.  This process is contemplated and allowed by

9  statute.  We have no objection.

10        THE COURT:  Thank you.

11     Sir?

12        MR. EMERSON:  Your Honor, no objection.  We

13  would just reiterate a request to set it out as far as is

14  reasonably possible.

15        THE COURT:  All right, then that's what I'll do.

16  We'll take up restitution today and set it out about 80

17  days.

18     And I'll get you a date and time for that hearing

19  before we close the proceedings today.

20     All right.  Swear the defendants.

21     [Oaths given.]

22        THE COURT:  All right.  We're ready to go with

23  Mr. Strom.

24     Are you Dustin Kenneth Strom?

25        DEFENDANT STROM:  Yes, Your Honor.

1            THE COURT:  How old are you?

2            DEFENDANT STROM:  Twenty-six years old.

3            THE COURT:  On June 30th, 2022, you pled guilty

4   to two counts of conspiracy to commit sexual exploitation

5   of a child, production of child pornography in violation

6   of 18 U.S. Code, Section 2251(a) and (e), and those were

7   Counts 1 and 2 of the charging document.  Counts 1 and 2

8   of superseding indictment filed in this case.

9        At the end of that proceeding I directed

10  preparation of a presentence report and I've reviewed

11  that report, as well as psychological examination from

12  Dr. Kristie Blanchard, a victim impact statement from

13  minor victim one in this case, and a sentencing

14  memorandum filed by the Government under seal at Docket

15  Entry 91 in this case.

16        The presentence report includes an addendum that

17  indicates no objections by either party.

18        Has everyone had an opportunity to review this

19  presentence report and are there any additional

20  corrections or objections?

21            MS. GORDON:  Thank you, Your Honor.  The

22  Government has reviewed the report.  The only slight

23  correction is what we mentioned in our sentencing

24  memorandum, which is the age of one of the victims, not

25  an official victim in the case, just for the -- he's

1  identified as nine years old, but he was in fact eight.

2  He would have turned nine later on in the year but at the

3  time of the offenses we believe it is eight.

4       Other than that minor correction, there are no

5  additional corrections or objections from the Government.

6            THE COURT:  Thank you.

7       Mr. Freund.

8            MR. FREUND:  Your Honor, I have reviewed the

9  presentence report and all the other materials you

10  mentioned with Dustin.  We have no objections or

11  corrections to the report.

12            THE COURT:  Thank you.

13       Mr. Strom, have you had an adequate opportunity to

14  review the presentence report and all these other

15  materials and go over them with your counsel?

16            DEFENDANT STROM:  Yes, Your Honor.

17            THE COURT:  Are you satisfied with his

18  representation in this matter?

19            DEFENDANT STROM:  I am, Your Honor.

20            THE COURT:  Very well.

21       Ms. Stansky, for the record, are you Thommie-Lyn

22  Stansky?

23            DEFENDANT STANSKY:  Yes, I am.

24            THE COURT:  How old are you?

25            DEFENDANT STANSKY:  Twenty-eight years old.

1          THE COURT:  On July 25th, 2022 you pled guilty

2  to two counts of conspiracy to commit sexual exploitation

3  of a child, production of child pornography, in violation

4  of 18 U.S. Code, Section 2251(a) and (e).  Those are

5  Counts 1 and 2 of the superseding indictment filed in

6  this case.

7          And at the end of that proceeding I ordered

8  preparation of a presentence report and I have that

9  document in front of me filed at Docket Entry 85.

10         It likewise includes an addendum indicating no

11  objections by either party, and I have likewise reviewed

12  the victim impact statement for minor victim one, and a

13  sentencing memorandum filed by the Government in relation

14  to you at Docket Entry 88 in this case, which is also a

15  sealed filing.

16         Have all the parties had an opportunity to review

17  all these materials with respect to Ms. Stansky and are

18  there any corrections or objections?

19         MS. GORDON:  Thank you, Your Honor.  The same

20  correction on the victim's age as eight instead of nine,

21  otherwise, no objections or corrections.

22         THE COURT:  Thank you.

23         MR. EMERSON:  No objections or corrections by

24  the defendant, Your Honor.

25         THE COURT:  Thank you.

1           Ms. Stansky, have you had an adequate opportunity

2   to review the presentence report and these other

3   materials and go over them with your counsel?

4           DEFENDANT STANSKY:  Yes, I have.

5           THE COURT:  Are you satisfied with his

6   representation in this matter?

7           DEFENDANT STANSKY:  Yes, I am, Your Honor.

8           THE COURT:  Very well.

9           Since there are no objections, I make the

10  following tentative findings based on Mr. Strom's

11  presentence report, and these apply to Mr. Strom:

12          Total Offense Level 43, Criminal History Category

13  of I, gives the following statutory constraints on

14  sentencing:

15          Custody on Count 1, 15 to 30 years; on Count 2, 15

16  to 30 years, those counts may be run consecutively to one

17  another, followed by supervised release on Count 1, five

18  years to life; Count 2, five years to life.  Those terms

19  would run concurrent with one another.  Not eligible for

20  probation.

21          Fine $250,000 for each count, special assessment

22  $100 for each count, AVAA assessment $50,000 per count,

23  Justice For Victims of Trafficking Act Assessment $5,000

24  per count.

25          Under the advisory sentencing guidelines it calls

1  for total custody of 720 months on Counts 1 and 2

2  combined, followed by supervised release of five years to

3  life on each count, not eligible for probation, fine on

4  Counts 1 and 2, $5,000 to $250,000, special assessment

5  $100 per count, AVAA assessment up to $50,000 per count,

6  JVTA Assessment $5,000 per count.

7          Turning to Ms. Stansky, I make the following

8  tentative findings based on her presentence report:

9          Total Offense Level 43, Criminal History Category

10 of I gives the following statutory constraints on

11 sentencing:

12         Custody on Count 1, 15 to 30 years; Count 2, 15 to

13 30 years.  Those custodial sentences may be run

14 consecutively to one another.

15         Supervised release on Count 1 of five years to

16 life; Count 2, five years to life.  Those counts of

17 supervised release could be run concurrent with one

18 another.  Not eligible for probation.

19         Fine $250,000 per count, special assessment $100

20 per count, AVAA assessment not more than $50,000 per

21 count, JVTA Assessment $50,000 per count.

22         Under the advisory sentencing guidelines it calls

23 for a sentence on Counts 1 and 2 of 720 months, followed

24 by supervised release of five years to life.

25         Each count to run concurrently.  Not eligible for

1  probation.

2       Fine on Counts 1 and 2, 50,000 to $250,000,

3  special assessment $100 per count, AVAA assessment of

4  $50,000 per count, JVTA assessment $5,000 per count.

5       All right.  Now we'll proceed to sentencing

6  arguments.

7       How does the Government want to present this?

8       MS. GORDON:  Thank you, Your Honor.  I just have

9  one presentation in which I'll talk about both of them

10  and that's how I would like to proceed.

11       THE COURT:  That's fine.

12       At what point are we going to offer the victims an

13  opportunity to speak?

14       MS. GORDON:  Your Honor, it's really up to the

15  victims.  If the victims would like to go first before I

16  go, of course I'll welcome that.  If they would like to

17  wait until after the presentation and it's whatever they

18  would like to do, Your Honor.

19       I think perhaps we could check in with them and

20  see what they would prefer, if that's all right with the

21  Court.

22       THE COURT:  All right.  Let's hear from the

23  victims who are -- do we have any victim representatives

24  in person?

25       MS. GORDON:  Your Honor, Jodi -- is it Mateo or

1  Stansky?

2      Thommie-Lyn's mom is here, she is taking care of

3  one of the minor victims at this point.  She is here.

4      We also have the guardian ad litem of the minor

5  victim one is on the screen, and the father of minor

6  victim two is also on the screen.

7          THE COURT:  Okay.

8      Does Ms. Stansky's mother count as a victim in

9  this case?

10         MS. GORDON:  Because she is right now taking

11 care of minor victim one, she could speak on behalf of

12 minor victim one if she wanted to.  I believe, Your

13 Honor.

14         THE COURT:  Let's find out.

15     What's your name?

16         MS. GORDON:  Okay, Your Honor, it appears she

17 has been indicating to our victim witness person that she

18 is not interested in speaking.

19         THE COURT:  And this person is the mother of

20 Defendant Stansky, correct?

21         MS. GORDON:  Correct.  She is the defendant's

22 mother and is currently caring for minor victim one.

23         THE COURT:  All right.  Very well.

24     Let's hear from the victim representatives on

25 Zoom, starting with the guardian ad litem for minor

1  victim one.

2       MS. MEYER:  Judge, my name is Angela Meyer.  I

3  am the minor child's guardian ad litem in a pending child

4  in need of care case.  I have submitted a written letter.

5       I believe to expedite the court proceedings I will

6  defer to the Court and allow the Court to read that

7  letter.  I don't wish to make an additional statement at

8  this time.

9       THE COURT:  Thank you.

10      And now do we have the father of the minor victim

11 two on Zoom?

12      Please state your name and let me know if you

13 have --

14      MR. DUVALL:  Phillip Duvall.

15      THE COURT:  All right.  Mr. Duvall, what do

16 you -- this is your opportunity as a representative of

17 the person whom we're identifying as minor victim two,

18 protecting the child's name, but you're her father and

19 this is your opportunity to speak on her behalf if you

20 choose to do so.

21      MS. GORDON:  And excuse me, Your Honor.

22      I would also, if it is all right with the Court, I

23 would also like to give him the opportunity to speak

24 after the Government's presentation if he would like.

25      He was unsure yesterday when we spoke if he wanted

1  to do it before or after, and so I would just like to

2  give him the opportunity for what he is most comfortable

3  with.

4          THE COURT:  That's fine.

5      Mr. Duvall, you want to speak now or you want to

6  go after the Government makes its presentation or do you

7  not want to speak at all?

8          MR. DUVALL:  I'll wait.  I'll do it after.

9          THE COURT:  Very well.  Thank you.

10          MS. GORDON:  Thank you, Your Honor.

11      Your Honor, the Government is asking for the

12  maximum sentence allowed in this case for both

13  defendants, that's 30 years for each count, to run

14  consecutive, for a total of 720 months.

15      Under the 3553(a) factors these defendants are the

16  worst kind of offenders that this Court can see.  They're

17  the most serious offenders, with the most extreme risk to

18  our community.

19      Your Honor, this case is somewhat difficult to put

20  together for the Court because there's just so much -- so

21  many horrific things that happened, it's really hard to

22  synthesize it and try to really focus in on the themes

23  and the reasons that is so dangerous and horrible.  So,

24  Your Honor, I think the defendant's own words really

25  capture the horrific nature of what we're talking about.

1           I want to start with just a little sampling of the

2   things that they talked between each other to show what

3   they are capable of and what they would do if they got

4   out.

5           The first quote is from Thommie-Lyn Stansky.  And

6   we got it because of a Snapchat search warrant.

7           And to set up a little bit of context, Thommie-Lyn

8   and Mr. Strom -- Ms. Stansky and Mr. Strom are having a

9   conversation in which they're talking about

10  the -- Mr. Strom's desire to sexually assault a

11  two-year-old little girl.  And Ms. Stansky at this point

12  has already sexually assaulted this little girl herself

13  and she is actively and aggressively encouraging

14  Mr. Strom to do so.

15          And Mr. Strom asks her, "How would I be able to do

16  it?  How could I do this to this two-year-old little

17  girl?"

18          And these are the words of Ms. Stansky, Your

19  Honor:

20          "We'll, first send Ivy somewhere."

21          And, Your Honor, Ivy is the name of the mother of

22  the two-year-old little girl.

23          "We'll first send Ivy somewhere.  Then take her

24  upstairs, and have her start with sucking your dick.

25  Then you can start to finger her and eat her small pussy

1  if you want to.  Then spit on her pussy so it's nice and

2  wet and then lube the tip of your dick and start to put

3  it in her tight little pussy and slowly start pushing and

4  the next thing you know your fucking her.  But keep a

5  pillow or something close to muffle the sound of her

6  crying if she starts.  And then keep going or don't if

7  she does.  I don't know how you'll feel if she does."

8          Your Honor, I provided exhibits to your deputy

9  prior to this, and the defense counsel has it has well.

10         Your Honor, if you look at Government Exhibit 1,

11  that is a picture of who they're talking about.  That is

12  a picture of what this little girl looked like when they

13  are talking about bringing a pillow to cover her face to

14  hide her screams.

15         This is a real child.  We talk about her as minor

16  victim two, this is a real child.

17         Excuse me.

18         She's barely verbal, Your Honor.  She would not be

19  able to tell us about these atrocities that happened to

20  her if they would not have taken pictures of it and

21  talked about it.  She was an innocent little two-year-old

22  girl who was violently abused by these defendants.

23         Doesn't stop there.  Another sample, Your Honor.

24         Three days -- just three days before Mr. Strom was

25  arrested, he is on Grindr talking about the abuse of

1  minor victim one.

2        And, Your Honor, if you look through here, Exhibit

3  3 is a picture of the little boy we're talking about when

4  he is happy, when he's being a normal little

5  four-year-old boy.

6        And what does Mr. Strom have to say about this

7  little boy?  He says to another offender, Mr. Everman in

8  this case, "Ima start with him again.  I'm buy lube.  You

9  still got his link or the others?  I want to show him

10  vids so maybe he will want to."

11        So what he's saying there, Your Honor, is

12  he's -- he's showing that he has already abused this

13  four-year-old child.  He wants to start with him again.

14  He is going to buy lube, which can only -- imagine what

15  sort of horrific things he had planned.

16        He is asking Mr. Everman for his link, meaning the

17  prior pictures of the abuse that he has done.  So that he

18  can show -- show the own abuse back to this child or he

19  says "others," meaning other child pornography.

20        So not only is he planning on physically and

21  sexually assaulting this child, he is going to further

22  abuse this child by exposing him to horrific images that

23  no one wants to see, much less a four-year-old.

24        And he says he wants to do that so maybe he will

25  want to?  That in his mind he thinks a four-year-old will

1  want to engage in a sexual act with a grown man?  This

2  shows what they're thinking and what they're capable of.

3        Your Honor, the only thing stopping these two from

4  hurting more children is prison.  This was three days

5  before his arrest, his plan.  They both deserve the

6  maximum sentence.

7        This is not a drug case where there's a hierarchy

8  and a sort of pyramid of where people go and some people

9  are less culpable than the other.  Each defendant in this

10 case inflicted otherwise unimaginable atrocities.  They

11 are unimaginable.  They are virtually impossible to

12 understand except for fortunately they documented it so I

13 have had to see it.  Otherwise you wouldn't believe that

14 it would have happened.

15        This is not a case of either or, or figuring out.

16 This is a case of both.  They both deserve it.

17        So let's start with Strom.  Why do we start with

18 Strom?  Because he started it all.

19        Now I've read the PSR, I've read his evaluation,

20 and I appreciate that terrible things happened to him

21 when he was a child.  It's awful.  Okay, to read that?

22 It's terrible.  I am sorry those things happened to him.

23 But this is absolutely not an excuse or a mitigation for

24 what occurred in this case.

25        He was a grown adult who made the decision to prey

1  on the most vulnerable people he could prey on.  And in

2  fact, the fact that Strom himself was a victim of child

3  sex abuse should make him more aware than anyone of what

4  kind of horrific consequences that can have.  He should

5  be more aware.  He should be more empathetic.  He should

6  be more understanding of what that kind of abuse can do

7  to a person, the long-lasting and devastating, lifelong

8  impacts of sexual assault on a child.

9         And you might make the excuse that having all the

10 stuff done to him has made him a molester himself.  I

11 don't believe that, Your Honor.  But if that were true --

12 let's just pretend that were true, that if you're

13 molested as a child then you are just destined to this

14 life of molesting children.  If that is true, then he

15 just created three more child molesters by his action.  I

16 don't believe it's true.

17        And the fact that he would say that, you know, if

18 you're molested as a child it can lead to these sort of

19 things, all that does is further victimize his victims.

20 That they have to grow up worrying, What will become of

21 me?  Will I become a monster?  That's not fair to these

22 kids.  He is an adult who made horrific choices.

23        Let's start with minor victim one.  What we know

24 from the metadata of the images is that the abuse of this

25 four-year-old little boy, that he began to be exploited

1  by Mr. Strom in February of 2021.  That's the earliest

2  date that we have.

3         The defendant began to procure images and abuse

4  him.  And, Your Honor, part of what he did was he got in

5  touch with Dillon Everman, and Dillon Everman would make

6  a link to these images on this platform called Mega.nz

7  and then he would take -- Mr. Strom would take that link

8  and distribute it to others.

9         We can see from Mega.nz that this folder, which

10 bears this child's name, he has a uniquely spelled name,

11 this folder has his actual name on it and pictures of his

12 sexual abuse.  That folder was created in March of 2021.

13 That images are going to be added to.

14        Your Honor, if you look at Government's Exhibit 4,

15 this is a sanitized image of sexual abuse.  I mean, I

16 have the actual images here.  I'm not going to -- we'll

17 talk about those later.  But Exhibit 4 is a sanitized

18 image.  And by that I mean that white square at the

19 bottom of the picture is defendant Strom's erect penis

20 that he has pointed at the face of this child.

21        And as you can see, Your Honor, this child is

22 crying.  He's a four-year-old little boy who is crying.

23        Your Honor, one of the other images of this child

24 shows Mr. Strom naked, again, with an erect penis.

25 Mr. Strom is lying on his back and he has this little

1  four-year-old boy on top of him, straddling him and he is

2  naked from the waist down, and the picture is from the

3  point of view of the feet looking up.  So you can see the

4  defendant's erect penis and he's kind of pulling this

5  little baby's bottom open and his penis is aimed at his

6  anus.

7       These are the images the defendant's responsible

8  for.  Not only does he abuse this child, he takes

9  photographs of it.  And I like to call them crime scene

10 photographs because that is exactly what this is.  He is

11 committing a crime on this child and he further

12 victimizes him by taking pictures.

13      And then distributing those pictures to

14 like-minded offenders.  And he's in contact with other

15 offenders.

16      Mr. Everman knew these children by name.  He asked

17 for these children by name.

18      How did he know the names of a four-year-old boy

19 and an eight year old boy?  Because Mr. Strom told him.

20      When he does that, when he tells other like-minded

21 offenders the names of these children and where they are

22 and where they live, he was talking to Mr. Everman on

23 Grindr.

24      And by the way, his chosen name on Grindr was

25 Incest 25.  That shows what he is interested in.

1          And when he's telling them this, it puts a target

2  on these children's back.  They know these kids' names.

3  They know what town they live in.  Mr. Everman lived in

4  the same town.

5          And kids who are sexually a -- being sexually

6  abused, offenders know it's easier to sexually abuse

7  those kids because they're already groomed, they already

8  have stuff going on.  He put a target on their back.

9          The other thing is, in addition to minor victim

10  one, Mr. Strom admits in his interview -- or excuse me,

11  admits on Grindr to Dillon Everman, when he asks about

12  the eight-year-old child, he says, "Have you ever played

13  with this child?"  And "play" is what this group of

14  people talks about when they mean sexually assault.

15          And Mr. Strom responded that he had showered with

16  the eight year old and hugged him.  All right?  So

17  basically any child around him is not safe.

18          And the other thing I thought was interesting,

19  Your Honor, was when I read the evaluation of Mr. Strom,

20  he absolutely fails to take responsibility.  There's one

21  point in here in the report where it says Mr. Strom

22  denied sexual interest in children in and of themself.

23  And that the production of child pornography was strictly

24  transactional.

25          This is when he's able to sit there and try to

1   cast himself in whatever way he might think but when you

2   look at the conversation that he had with Ms. Stansky on

3   Snapchat, this whole assertion that he is not sexually

4   interested in children doesn't work because he says, "I

5   really want to fuck a kid."  That's not something someone

6   says when they're not sexually interested in children.

7        And what's more, there are numerous photographs

8   with Mr. Strom having an erection around these small

9   children.

10       He claims in his evaluation that he has erectile

11  dysfunction.  There's certainly no problem with him

12  getting an erection around these small children.  That's

13  what the evidence shows.

14       He's already abused minor victim one.  He has

15  showered with an eight-year-old boy.  He claims to not be

16  sexually interested in children.  Well, he sodomized a

17  two-year-old little girl.

18       There was a brief period of time where he and Ms.

19  Stansky worked together to get the mother of this

20  two-year-old out of the house.  They go to Walmart and in

21  that brief period of time he took a picture of his erect

22  penis that he shoved into the mouth of a two-year-old.

23       And, Your Honor, you already saw her picture.

24  That is Exhibit 1 and 2.

25       So the fact that he is not fully capable of

1   understanding where he is, that he can try to say in a

2   report that he's not sexually attracted to children, then

3   that's -- how could he have had a hands-on sex offense

4   with a four-year-old boy?

5            A hands-on sex offense with a two-year-old girl?

6            An eight-year-old that he admitted to showering

7   with?

8            An eight-year-old who he called into a hotel room,

9   pulled down his pants and watched as the mother sodomized

10  the eight-year-old?

11           That shows that he absolutely has a sexual

12  interest in children.

13           He also in that same report admits to spending two

14  to three hours per day watching child pornography and

15  masturbating.

16           It blows my mind to think that someone -- Your

17  Honor, I don't know for sure what images he was looking

18  at when he talks about looking at these images for two to

19  three hours a day and masturbating but I have certainly

20  seen some of the images in his collection.  One of them,

21  which is in this envelope, is an infant, maybe two to

22  three months old, an infant naked, with an erect penis

23  aimed just inches from their bottom.

24           These are the sorts of images in his collection.

25           So he talks about watching child pornography for

1 two to three hours a day.  Your Honor, this is stuff that

2 is so hard to look at for even just a second, to hear him

3 say that he does that two or three hours a day shows

4 again what kind of person he is, what he's interested in,

5 how dangerous he is.

6          And, again, three days before his arrest he is

7 planning an additional sexual assault on the

8 four-year-old.  And I'm so thankful that law enforcement

9 was able to move as quickly as they could to try to

10 protect this child.

11          The only thing stopping this defendant from

12 hurting more children is prison.

13          So what do we know about Mr. Strom?  He's a

14 long-term offender.  He's escalating in his offenses.

15 His hands-on offenses have escalated.  He is getting

16 younger and younger:  He has an eight-year-old, a

17 four-year-old, a two-year-old.  Boys, girls, doesn't

18 matter.

19          He's incest driven.  It shows by the name he chose

20 in his Grindr account, by his own admissions, what he is

21 interested in.

22          He actively seeks out mothers with young children.

23 He did it with Thommie-Lyn Stansky, he did it with the

24 mother of minor victim two.  He finds women with young

25 children.

10/19/2022    USA v. STROM    21-10068-1    32

1          And he's brazen.  He is a hands-on offender.  And

2   he will tell these mothers that he's interested in child

3   pornography.  And see if he can get them involved.  And

4   he found that in Thommie-Lyn Stansky.  He told her about

5   his interests, he shared it with her, and she actively

6   participated in it.

7          He is someone that produces and trades images.  He

8   is in touch with other offenders.  And when he is

9   arrested, he doesn't help us by protecting other kids, he

10  only admits to what we know.  What he knows that we know.

11  And he tries to minimize his conduct.

12         For example, he says, Oh, I took some pictures of

13  the kids but they were sleeping.

14         You can see by the crying face in the exhibit I

15  showed you that child is not asleep.

16         In addition to sexually assaulting the kids, Your

17  Honor, I watched the forensic interviews of these kids.

18  Aside from all the horrific sexual abuse, all the things

19  he has done, he physically abused these kids.  He has

20  absolutely no boundaries.  He has no inhibitions and he

21  is persistent even after being shutdown.

22         There are times when his Snapchat would get

23  shutdown.  His Mega account, his Kik account, all these

24  accounts would get shutdown.  He would just start a new

25  one and start right back up.

1          He's callous, Your Honor.  At one point on

2   Snapchat Thommie-Lyn's complaining about the fact that

3   the two-year-old is crying.  Just a normal two-year-old

4   crying.

5          And do you know the defendant's suggestion on

6   Snapchat?  He says, Maybe this two-year-old little girl,

7   she'd -- she needs some cock.  That's his explanation as

8   to why her two-year-old is crying.  He's callous.

9          He's willing to hurt extremely small children.

10  He's done it before, he'll do it again.  He's interested

11  in doing it.  The only thing stopping him is prison.

12         Now let's talk about Thommie-Lyn Stansky.  And,

13  again, Your Honor, they both deserve the maximum

14  sentence.

15         When I think about Thommie-Lyn Stansky it's hard

16  to think about.  Because I keep thinking that if you are

17  not safe with your mother, then where could you possibly

18  be safe?

19         She has two children on this earth and both of

20  them have to live with the fact that their own mother

21  sexually assaulted them.  And what must that do to you as

22  a child?

23         Your Honor, what we know about Thommie-Lyn Stansky

24  is that in May of 2021 she is away from Dustin Strom.

25  She's in Arizona with her two kids.  She has a place to

1  live.  She's with her mom.  She's there.  And we also

2  know that at that point she knows that Dustin Strom is

3  interested in child pornography.  And how do we know

4  this?  Because on Snapchat, she tells a friend that.

5          She says, "I found out Dustin's interested in

6  child pornography."  But instead of saying, "Oh, my gosh,

7  I'm so glad that I'm safe here in Arizona and that I'm

8  with my mom, and oh, my gosh, my boys, are you okay?

9  Have you been hurt?"  That's not what she does.

10          Instead, she messages Dustin Strom says, "Oh, I

11  love you, I miss you, I want to be back together."

12          He comes back out to get her.  And on the trip

13  back, at the first opportunity, she sacrifices her first

14  born son to his pedophilic interest.

15          Your Honor, Exhibit 5 is a picture of her oldest

16  son.  He's not an official victim in this case because

17  they didn't take pictures of it and the abuse did not

18  happen in Kansas, but when he was -- when Thommie-Lyn was

19  arrested, she admitted to sodomizing her oldest son and

20  her youngest son.

21          So they did a forensic interview of this child.

22  And, Your Honor, it's heart-wrenching to watch because

23  when he comes in the room, he's just being a normal

24  little boy, you know, he is playing and talking and

25  excited.  And in fact, he doesn't disclose it.  He

1  doesn't want to talk about it.

2       It is only when they say, Now, if your mom said

3  that she put her mouth on your penis, is she lying or

4  telling the truth?  And you can see the physical reaction

5  in this child.  And he does -- he does disclose it and

6  this is what he says happens:

7       He says that they were in a hotel and he was

8  outside playing with his little brother and Dustin and

9  his mom called him into the hotel room and when he got in

10  the hotel room, Thommie-Lyn was naked.  They made this

11  little eight-year-old lay down in the bed between the two

12  of them and Dustin Strom pulled down his shorts and he

13  watched while the mother of this child sodomized her

14  oldest son.

15       Your Honor, this is an eight-year-old little boy.

16  He should be thinking about spelling words, and what

17  they're going to play at recess, and what team might be

18  on that weekend.  And instead, because of the actions of

19  Thommie-Lyn Stansky, he is in a room with a stranger

20  having to talk about how his mom sexually assaulted him.

21       She didn't stop.  Thommie-Lyn did not stop at

22  that.  She abused her other son, her four-year-old child.

23       Your Honor, there's a picture of Thommie-Lyn

24  Stansky, recovered from her phone where she has her mouth

25  on the penis of her four-year-old son.  The picture is

1  kind of taken from a top angle, such that it would seem

2  almost impossible for her to take it.

3          What's more, Your Honor, she knows that Mr. Strom

4  is sexually interested in children.  She sexually abuses

5  her child and she continues to leave her child with

6  Mr. Strom.  Knowing that he is sexually interested in

7  children.

8          This four-year-old little boy should be learning

9  his letters and his shapes and his colors.  He should be

10  thinking about fire trucks and superheroes.  And instead

11  he is repeatedly sexually assaulted in his own home by

12  his mother and his mother's boyfriend.  There is nowhere

13  safe for him to go.

14          Thommie-Lyn doesn't stop there.  What's

15  interesting about her is she starts the abuse of the

16  two-year-old little girl.  Now this two-year-old little

17  girl, the mother of the two-year-old little girl was in a

18  relationship with Mr. Strom at one point.  Apparently

19  there was some relationship between all three of them.

20  Whatever, I don't care what consenting adults do.

21          But this woman had a two-year-old little girl.

22  And Thommie-Lyn Stansky raped her.  She inserted her

23  finger into the vagina of this two-year-old little girl

24  and as she said, "all the way up to her knuckle."

25          When talking about this, Your Honor, Mr. Strom

1  asked Thommie-Lyn Stansky, "Why did you stop?"

2       And Thommie-Lyn Stansky answered:  "Because she

3  kept saying mommy hungry."  That's what the two-year-old

4  little girl said.

5       Thommie-Lyn didn't stop.  She sexually assaulted

6  her two sons; she sexually assaulted a two-year-old.  Her

7  next step was to aggressively, consistently encourage the

8  defendant to sexually assault the two-year-old.

9       Here's what she said on Snapchat to him.  This is

10  Thommie-Lyn Stansky.  She's encouraging him to abuse this

11  two-year-old little girl and she says, "I know I wish I

12  could be there to go through it with you.  I really do.

13  It would be so fucking sexy to watch you do that."

14       And Mr. Strom says, "To do what?"

15       And she responds, "Watch you fuck a kid."

16       That's what she's interested in.  It's not enough

17  for her to be the hands-on offender.  She's encouraging

18  him.  She comes up with the plan to make it happen.

19       She lures this little girl's mom away, takes her

20  to Walmart to go shopping, and then she checks in with

21  the defendant to make sure that there had been enough

22  time for him to sexually assault her.

23       Thommie-Lyn writes:  "You gonna do stuff with" --

24  and then she names the child.

25       Dustin wrote, "Hmm."

1          Thommie-Lyn states again, "You gonna do stuff

2     with" -- the name of the child.

3          Then Mr. Strom says, "I can."

4          And Thommie-Lyn says, "Please, I want to see so

5     bad."

6          She is literally begging the defendant to sexually

7     assault the little girl you see in Exhibit 1. And, Your

8     Honor, this is what she looked like at the time of the

9     abuse.

10          In fact, Government's Exhibit 2 is a sanitized

11     picture. This is a picture from a sexual assault. There

12     is no penis in the picture but there's a penis there.

13     That is the child they're talking about. This tiny

14     little toddler, a two year old.

15          So Thommie-Lyn wants to make sure he's able to do

16     it. She checks in and she texts him, "Did you do it yet?

17     We're leaving Walmart. Do you need me to stall more? Do

18     you need me to keep the mom further away?"

19          And he says, "I did."

20          And she says, "Let me see."

21          Your Honor, he then sends a horrific image. Again,

22     it's in this folder. It's an innocent, precious, little

23     two-year-old girl with Strom's erect penis shoved into

24     her mouth. It's horrible to see. It makes you sick to

25     your stomach.

1        Not Thommie-Lyn.  She gets this picture that she

2   helped put in motion, that she helped create but she

3   didn't take it, but she made everything else happen, and

4   what does she say?

5        "Oh, my fucking God, I just want you to fuck the

6   shit out of me right now.  I'm so fucking horny.  Uh, I

7   can't get the pictures out of my head.  I'm so horny."

8        Well, I can't get these pictures out of my head,

9   either.  They're horrific.

10        That's not the response any person would have.

11   That's not the response any non-dangerous person would

12   have.

13        Finally, a cyber tip comes in, and it's escalated

14   because there is new images.  They see there is new

15   images being created.  (Uses onomatopoeia.)  They're on

16   it.  Law enforcement immediately goes out to get them.

17   They go to the house that these two share.  Mr. Strom is

18   on the road, so they figure out a way to catch him.  He's

19   a trucker so they figure out where he is and they arrest

20   him.

21        But in the meantime they're executing the search

22   warrant on the home of Thommie-Lyn Stansky, so they

23   collect all the devices.  And when they're there, they

24   show her Government's Exhibit 4, that sanitized image.

25   They show her the picture of her child crying and they

1  say, "Do you know who this is?"

2      And she says, "Yes, this is my child."

3      And then they make the difficult decision to show

4  her the unsanitized image, to say, "Do you have any idea

5  whose penis this is?"

6      And what does she do?  She sees an image of her

7  own child crying with an erect penis next to his face,

8  and she lies for Mr. Strom.  She says, Oh, that

9  can't -- I would recognize his penis and that's not his

10  penis.

11      This is what a mother did when she saw these

12  images.  She lied for her boyfriend.  When she saw a

13  crying picture of her four-year-old.

14      They seized her devices, they went through them.

15  And they were able to see the images of her abusing her

16  children.  So they called her in, because she kept

17  calling law enforcement saying, "Where is my phone?  I

18  need my phone."  Never once is she saying -- ever coming

19  forward with any of this.

20      So when she comes in, she still lies.  And she

21  says she's threatened.  She said that Dustin Strom

22  threatened her.

23      And the other interesting thing, Your Honor, I

24  can't quite get this one out of my head.  She describes

25  abuse of ███████ -- excuse me, of her oldest son.  And the

1  abuse incident that she describes is different than the

2  one that her son described.  So I don't know if her son

3  just wanted to describe one and get out of it, or to me

4  it shows the abuse of her oldest son happened more than

5  once because she didn't know which one we knew about or

6  didn't know about.

7      And the one she described is particularly

8  chilling, Your Honor.  She says that her eight-year-old

9  son had a nightmare.  And he did what any child would do

10 in that situation, which is come to their mother for

11 comfort.

12     And, Your Honor, as a mother there is really no

13 greater privilege and honor than to be able to comfort

14 your scared child in the night because that's what they

15 need in the night, they need their mom to keep them safe.

16 They need their mom to just say, It's okay, it was just a

17 dream, go to sleep, it's okay.

18     That's not what Thommie-Lyn Stansky did.

19 According to her, this child tried to escape a bad dream

20 and he walked into a nightmare.  Because when he entered

21 the bed with his mother, she did not comfort him and get

22 him back to sleep, she says she sexually assaulted him.

23 Though that's what Thommie-Lyn Stansky said.

24     She also claims that Dustin threatened her with a

25 knife and said he was going to kill her, all these

1  things.

2       Once again, Thommie-Lyn's own words show you who

3  she really is.  Though she was in jail she wrote letters

4  to Mr. Strom and she said, "I'm here for keeps, no

5  bullshit.  But I do hope you can forgive me for telling

6  them that you were going to kill me.  I know you'd never

7  do that to me or the kids.  Like I said I'm just trying

8  to get out ASAP to start our lives and support you in

9  here."

10      What I found interesting, Your Honor, about these

11 letters that she writes to Mr. Strom, I don't see any

12 expression of concern for her children.  I don't see any

13 worry about, Where are the kids?  Are they safe?  Are

14 they okay?  Oh, I can't believe what I've done to them.

15 I can't believe what you've done to them, I can't

16 believe -- there's none of that.

17      What is she writing to Mr. Strom about?  Marriage

18 and love.  Her devotion to him.

19      She writes to him:  "No matter what I'm always

20 going to be in your corner fighting and rooting for you.

21 You're the biggest blessing I've had come into my life.

22 I wouldn't trade it for anything."

23      That doesn't sound like remorse.  It doesn't sound

24 like someone who's not dangerous.

25      She also seems to request that Strom lies and says

1   that he threatened to -- she is asking him basically to

2   lie to this Court.  She says, "The only thing that will

3   benefit or help me is if you say, yes, I did say I'd kill

4   you but up to you."

5        And then she writes to him, "I hope you'll say I

6   had nothing to do with it but I'm not going to force you.

7   Just know I love you and I'm sorry."  She's asking him to

8   lie to this Court.  So that she can get out.

9        So what do we know about Thommie-Lyn Stansky?

10  Dustin may have started this, but she was all in.  The

11  speed and the level of depravity that she went to in

12  abusing these children is astounding.  From May of 2021,

13  telling a friend, I know he's into child pornography, to

14  sexually abusing her oldest son on the way home, to

15  sexually abusing her four-year-old, to sexually

16  assaulting a two-year-old, she was in it.  And the whole

17  time there is no indication or concern for any of these

18  children or their well-being.

19        In fact, it's opposite.  It's an acknowledgment

20  that, Hey, when a two-year-old is raped by an adult man,

21  she may start to scream.  Instead of saying, Oh, maybe we

22  shouldn't do this?  It's, Bring a pillow, cover her face.

23        And why does she do all this?  Again, look to her

24  own words.  Her sexual gratification?  The Snapchats?

25  She is a hundred percent into it.

1           And why else?  At her mirandized interview she

2   said that Mr. Strom was her sense of security and her

3   money.  That's why she would do this to her own children.

4           And, Your Honor, she's a danger.  And how do we

5   know she's a danger?  Once again, her own words:  What

6   does she say on Snapchat?

7           Again, discussing the two-year-old little girl she

8   says, "I can't really fuck her, all can I do is eat her

9   out and finger her but I'd enjoy doing it again if I got

10  a chance."

11          This Court should believe her.  She would do it

12  again if she got a chance.

13          She received realtime production photos of the

14  abuse of a child.  She abused her own children.  She

15  failed to stop the abuse when she knew that her partner

16  was into child pornography.  She documented her own abuse

17  of the children.  We're talking about the most vulnerable

18  members of our society.

19          You should believe Thommie-Lyn Stansky when she

20  says that when she considers Mr. Strom her biggest

21  blessing that she wouldn't trade it for anything.

22          Your Honor, when you look at the 3553(a) factors,

23  the only reasonable sentence is the 720 months that each

24  of them deserves.

25          Their plea agreement protects them from the life

1  sentence contemplated by the guidelines, but under

2  3553(a) these are the worst type of offenders, the most

3  serious offenders, with the most extreme risk.

4       . This is not a drug case where a relapse is that

5  they do drugs again and they have to start over.  A

6  relapse is another child victim.

7       Your Honor, I have described some of these images.

8  They're still in this envelope.  I will tell you that

9  they are, as Thommie-Lyn said, you can't get them out of

10 your head.  They're horrific.  I don't want to make the

11 Court look at them because they're so terrible, so here's

12 what I have thought about.

13      If this Court is convinced that the 720-month

14 sentence is appropriate, there's no need for me to

15 further traumatize you and make you look at these images,

16 Your Honor.  But what I would urge the Court is that if

17 you are considering less than the statutory maximum, then

18 under the 3553(a) factors, I believe it's absolutely

19 important for you to see what they're truly capable of

20 and the risk that these offenders present.

21      Because as horrible as it is to sit here and

22 listen to all these things -- and these aren't my words,

23 these are their words, these are their actions -- as

24 horrible as it is to sit here and listen to it, it's even

25 worse to see it.

1          So, Your Honor, I would just ask that if you

2    consider departing, that you take the time then to review

3    the images.

4              THE COURT:  Okay.

5          MS. GORDON:  They each deserve 60 years.

6       Thank you.

7              THE COURT:  Thank you.

8          MS. GORDON:  We'll see, Your Honor, if

9    Mr. Duvall would like to speak.

10             THE COURT:  All right.  Mr. Duvall, do you want

11   to say anything?

12             MR. DUVALL:  I don't have a lot to add.  I would

13   just like some people to know that my daughter is doing

14   fine today and I doubt that she's going to remember any

15   of this ever happened, which I -- I hope -- I hope that's

16   how it is.

17             And I want the two of you to know that if you

18   weren't beyond my reach, you would be in pieces.  Since

19   it is, I am going to leave that in the hands of the Court

20   and your fellow inmates.

21        Thank you.

22             THE COURT:  Thank you.

23             Ms. Meyer, as the guardian ad litem for minor

24   victim one in the state case, she appeared by Zoom

25   earlier in this hearing, sent a letter, a victim impact

1 statement on behalf of minor victim one who's the

2 four-year-old, who was at the time the four-year-old son

3 of Defendant Stansky, and I think this is an appropriate

4 time for me to read into the record some parts of that

5 just to -- because I'm going to consider this, along with

6 everything else that has been said here today, in

7 fashioning an appropriate sentence and so I think I'll

8 put that on the record presently.

9      Ms. Meyer says that for a child such a young age,

10 minor victim one is bright and articulate.  He, however,

11 is incredibly fixated on punishing one of the people who

12 hurt him.  He's repeatedly expressed that he wishes to

13 beat the man who hurt him or kill the man who hurt him.

14 Also says he could lock him up in prison and hope that

15 people forget he's there.

16      Ms. Meyer indicates that minor victim one's

17 therapist has concluded that this child has experienced

18 trauma and has significant unresolved trauma and mental

19 health issues.  He seems hypervigilant in his drawings

20 and his desires to focus on building a prison secure and

21 strong enough to hold Mr. Strom.

22      She observes that his energy is directed and

23 channeled in a dark and angry manner.  His drawings

24 include placing dogs as guards around the prison to

25 ensure that Mr. Strom never escapes.  At times this

1  victim plays and imagines that the dogs and guards go

2  into the prison to punish Mr. Strom for what he has done.

3       She observes that his imagination, unlike peers in

4  his age group, is not full of fun things of life but it

5  is dark and vengeful and pictures ways to confine the

6  person who inflicted pain and agony on him.

7       She observes that this child is now in the foster

8  care system which makes him, among other things,

9  statistically more likely to be involved in criminal

10 proceedings, substance abuse, and struggle with mental

11 health issues.

12      She observes that his mother made choices that's

13 -- his mother being Ms. Stansky, that have forever

14 changed this child's life.  And did so without care or

15 concern for him.

16      Among other things she asks that I impose a no

17 contact order between both the defendants and this child

18 to include cards, letters, or communications of any kind.

19      She observes that he is likely to struggle with

20 memories of what he endured for the rest of his life.

21 That he will likely need therapy for a significant amount

22 of time to process the trauma and harm caused by Stansky

23 and Strom.

24      Ms. Meyer expresses fear for this child's future.

25 And how he will cope as he grows.

1        She closes by saying these two individuals took

2   away minor victim one's childhood, took away what should

3   be a carefree, happy time in any child's life.  She asks

4   that the Court punish the perpetrators accordingly.

5        I think we'll take a break until 3:00 p.m., at

6   which point we'll return and allow the defendants to

7   present their arguments in mitigation.

8        Court will be in recess until 3:00 p.m.

9        (Recess taken.)

10        THE COURT:  Now I'll hear sentencing arguments

11   for Defendant Strom.

12        MR. FREUND:  Your Honor, I'd like to start by

13   reading a letter from Dustin's adoptive mother, Karen

14   Lynette Strom.  She was unable to be here today.

15        Dear Judge Broomes:  From the first time I saw the

16   picture of Dusty at seven I loved him and knew he would

17   be my son.  He told his case manager he wanted me to

18   adopt him before I met him in person because he was

19   afraid I would change my mind.

20        .  He was always a people pleaser and was truly

21   the joy of my life.  He's never been in any trouble

22   before and I thought that meant he was okay and that the

23   years spent in therapy helped.  He brought so much love

24   and pride to his adoptive father and me.  We adored him

25   and felt the feelings were mutual.

1        I wish -- his adoptive father passed away in

2   Dustin's teen years and my oldest son stepped in to help

3   with Dustin.  I know he has made some terrible decisions

4   and he knows that as well.  He deserves a second chance

5   at life and I am asking you for mercy as you sentence

6   him.  Please give him a chance to finally confront and

7   get rid of his demons and have the opportunity to live as

8   a free man some day.

9        As it stands, I will never -- never see him again

10  outside of prison, as I am 71 years old.  I ask you to

11  consider this as you decide a sentence for Dustin.

12       Thank you for your time and consideration.

13       Respectfully, Karen Lynette Strom, Dustin's

14  mother.

15       I have a letter as well from Dustin's adoptive

16  brother, Warren, who essentially stepped in to the father

17  figure role after Dustin's adopted father was convicted

18  of fraud, sent to prison, and then died shortly after

19  release.

20       Dear Judge Broomes:  I am writing to you in

21  support of Dustin Kenneth Strom.  I understand the

22  charges he's being sentenced for but wanted to take this

23  opportunity to explain there is more to this young man.

24       He was adopted by my mother and her husband when

25  he was eight years old, along with his sister.  His

1  adoptive father passed away when he was 14, which

2  devastated and forever changed him.  As his legal brother

3  I stepped in as a father figure and helped raise him to

4  adulthood.

5       I am sure I don't need to dive into details as I'm

6  sure you're aware of his background and the horrible

7  abuse he suffered before his adoption.  Despite years of

8  child therapy, Dustin denied the affects of his toll this

9  abuse had on him and soon aged out and joined the work

10 force.  Dustin was a hard worker and was always kind to

11 his family and anyone who came to know him.  He was great

12 support system for his family.

13      I wish I had insight into what he was struggling

14 with and will take that regret to my grave as I am unable

15 to help him.  He has accepted responsibility for his

16 offenses.  I am begging for mercy and implore you to

17 understand Dustin was not just what he is being sentenced

18 for.  He is like my son and my best friend.  I ask you to

19 consider this when deciding a sentence for Dustin.

20      Thank you for your time and consideration.

21      Warren Kenneth Strom, III.

22      Your Honor, we're asking you to impose a sentence

23 of 30 years in prison, followed by a 15-year term of

24 supervised release, together with the standard mandatory

25 and special conditions listed in the presentence report.

1   We believe this sentence is sufficient but not greater

2   than necessary to meet the 3553(a) factors.

3          We would ask that you recommend the Bureau

4   designate Dustin to FCI Marianna for two reasons:

5          Number one, they have a sex offender treatment

6   program.  The reality is that is not a program he'll be

7   able to actually engage in until he is towards the end of

8   his sentence, but they also have multiple vocational

9   training programs, including electrician, HVAC and

10  apprenticeship program.  And it is Dustin's plan to

11  occupy his time in the most productive way possible while

12  working to the release.

13          THE COURT:  What's the name of the facility?

14          MR. FREUND:  FCI Marianna, M-a-r-i-a-n-n-a.

15          THE COURT:  Okay.

16          As we briefly discussed earlier, Dustin has agreed

17  to pay restitution in the full amount set by the Court.

18          We're asking you not impose a fine, waive the JVTA

19  Assessment.  It's I think apparent from the presentence

20  report Dustin is indigent.  He will remain so for the

21  foreseeable future.

22          And if you impose an AVAA assessment, we ask it be

23  $5,000 per count.  That is something he would be

24  obligated to pay after he satisfies restitution in full.

25          THE COURT:  Wait a minute.

1           You said the AVAA, you're asking for 5, and is

2    that -- what about the JVTA?

3           MR. FREUND:  The JVTA, Your Honor, is only

4    applicable if you find Dustin is not indigent, I believe

5    is how 3014 phrases it.

6           THE COURT:  All right.

7           MR. FREUND:  And we're asking you to find that

8    Dustin is indigent based on the financial information in

9    the presentence report.

10          THE COURT:  Okay.  All right.

11          MR. FREUND:  The presentence report accurately

12   describes Dustin's actions.  He fully acknowledges his

13   conduct was serious and that he deserves a serious prison

14   sentence.  He's accepted responsibility.  He admitted his

15   guilt, that started with an interview he gave to the

16   highway patrol in Missouri on August 24th of 2021.

17          Dustin gave that interview after spending a full

18   day on the road and being awake about 24 hours but of

19   note, he told the highway patrolman towards the end of

20   the interview, "I deserve everything I'm getting."

21          During that interview he consented to a search of

22   his cell phone.  He signed a form.  He gave the code to

23   get into his phone and that phone was subsequently

24   examined, and of course additional evidence was found.

25          And of course on June 30th Dustin continued to

1  accept responsibility when he stood in front of you and

2  entered a plea of guilty to Counts 1 and 2 of the

3  superseding indictment.

4        I want to briefly touch on Dustin's history and

5  characteristics.  We provided you a report from Dr.

6  Blanchard because the statute requires you to consider

7  Dustin's history and characteristics, and that goes

8  beyond the offenses he's committed.

9        And as the evaluation describes, Dustin was a

10  victim not only of extensive sexual abuse but physical

11  abuse and psychological abuse by both of his parents.

12  And what I found of note in the report is Dustin

13  considered the physical abuse the worst of all.  In fact,

14  he remembers he was handed a gun when he was about four

15  years old and made to act as a lookout.

16        Going in foster care was an improvement but not by

17  much.  His first placement was about two-and-a-half years

18  where the family had recently lost a ten-year-old son and

19  they tried to make Dustin a clone of their deceased son,

20  going so far as to call him by his name, having him watch

21  movies of their deceased son.  Then he had about four or

22  five other placements, all relatively short-term.

23        So while the state of Arizona was providing

24  counseling, every time he moved placements it would start

25  over again.  So for the longest time there wasn't really

1  much progress.

2       And then he was adopted by Karen Strom and her

3  husband Robert Solis.  And for a brief amount of time,

4  family life was very stable, life was good, and then

5  cracks started to appear.  It became apparent that Robert

6  was living at least a double life.  He went to a high

7  school reunion that he never attended the high school.

8  He convinced people he had gone there.

9       He bought a police car and a badge and

10 impersonated a police officer and was finally sent to

11 prison for fraud.  So this of course destroyed the family

12 unit.  It destroyed them economically, and Mr. Solis died

13 within a year of release from prison.

14      Despite everything he suffered, he obtained

15 gainful and maintained gainful employment up until his

16 arrest.  He was actually providing financial support for

17 Karen and Warren.  Warren had a pretty serious back

18 injury and was unable to work.  Karen was in her late

19 60s, early 70s, really couldn't work, and Dustin would

20 actually get a house for them.

21      And then I think his mother was a bit of a

22 hoarder, when she would have the house full Dustin would

23 rent a new house, move them into it, move into that

24 house, and clean everything up.

25      Dustin in no way denies what he did was incredibly

1  serious but he would like the Court to understand he is

2  not as someone who stood before you a serial offender,

3  insofar as he was arrested, convicted, sentenced,

4  released, and reoffended.

5       And it is apparent from the presentence report he

6  is in Criminal History Category I.  The sum of his

7  criminal history is two traffic tickets.

8       Dustin is asking you for a sentence of three

9  decades.  That's a sentence several years longer than he

10  has even been alive.  And a 15-year term of supervised

11  release.  And we believe with the conditions suggested in

12  the presentence report, especially the special

13  conditions, that this would protect the public and deter

14  future crimes.

15       Of course Dustin will be required to register

16  under SORNA as a sex offender.  That obligation will most

17  likely last for his lifetime, not just during the term of

18  his supervision.

19       The no contact with persons under age 18, both the

20  exceptions noted in paragraph 256 of the report are

21  appropriate.

22       No contact with the victims or family.

23       The computer and internet monitoring restrictions

24  are appropriate.

25       The financial monitoring condition, in the event

1  that Dustin has an outstanding restitution obligation,

2  the search condition, the mental health condition, and

3  the substance abuse treatment condition will all promote

4  his reintegration in the community.

5        The presentence report reflects that Dustin did

6  have a substance abuse problem but he reflected that that

7  in no way impacted the decisions.  He is not blaming what

8  he did in any way on drug abuse.

9        With respect to needed educational or vocational

10 training, medical care or other correctional treatment,

11 Dustin currently does not require medical care.  The only

12 serious medical issue he has had as an adult was a MRSA

13 infection that almost resulted in the amputation of his

14 arm.  As long as he stays in a clean environment and is

15 sanitary, hopefully the MRSA infection will not reemerge.

16        The designation to Marianna would allow him to

17 engage in multiple vocational training programs.  He has

18 significant experience as an over-the-road truck driver

19 and attendant to that he knows quite a bit about diesel

20 mechanics, so he anticipates with the time he will spend

21 in prison he might actually be able to assist other

22 inmates in their vocational training.

23        The statutory range that you have announced and

24 the guidelines range have you announced are both correct.

25        Dustin has agreed to pay restitution.  He

1   understands that that's something you'll determine at a

2   later date.

3         He has expressed to me that if he could waive his

4   presence at that hearing since it will be more of a

5   ministerial hearing, he is willing to do that if it would

6   speed up the process.

7         He anticipates he'll begin paying restitution

8   while he's serving his sentence and that would be through

9   the Inmate Financial Responsibility Program.

10        Of course his earning capacity in prison will be

11  significantly less than would be if he was out.  He

12  understands that.  He expects that he would probably not

13  be able to fulfill his obligations toward restitution

14  while he's in the bureau and, if not, then when he has

15  higher earning potential and he is released, that is

16  something he can pay more towards.

17        The first step towards rehabilitation is

18  recognizing that you need to change and Dustin has voiced

19  a desire to change.  He told that to Ms. Clark during his

20  presentence interview.  That's not something you always

21  see from somebody who's facing sentencing.

22        He understands the next step in his rehabilitation

23  will be him serving a very long prison sentence and he

24  understands the decisions he makes while serving that

25  sentence can assist him with his rehabilitation and

1  reintegration in the community, if he is ever released,

2  or be detrimental.  And his plan is to make the best of

3  his sentence, to gain as much vocational training as

4  possible.

5      He hopes to get a UNICOR job because they pay more

6  than your normal prison jobs.  He will have more money

7  then coming into his trust account and more money going

8  out as restitution.

9      After a 30-year sentence Dustin will be in his

10  50s.  I anticipate I will be long retired.  I won't

11  speculate as to what the Court will be doing because this

12  courthouse has a long and rich tradition of senior

13  judges.  But Dustin will be in his 50s when he's released

14  if he serves 30 years, and then be supervised by

15  probation.  He'll have to register.

16      And he understands that today there is no apology

17  he can offer that will mean anything.  The only thing he

18  can do is use his time productively and come out of

19  prison much better than he sits here today.  And we ask

20  you to give him that opportunity.

21          THE COURT:  Mr. Strom want to speak?

22          DEFENDANT STROM:  Yes, Your Honor.

23      Your Honor, I fully accept responsibility for what

24  I have done and that I desire -- or that I deserve a

25  serious sentence.  I fully understand that.  I'm not

1  talking about small time, I understand I deserve most of

2  my life in prison.

3       I understand that any kind of apology would be

4  meaningless.  And seeing that I will be getting a lengthy

5  sentence, sometimes it's hard to say what I would be

6  facing when I get there, but given the opportunity I will

7  use my time in prison working towards rehabilitation and

8  programming and getting a job.

9       All I can ask is for an opportunity that some day

10 I prove that I am no longer the same person that you

11 sentence today, Your Honor.

12          THE COURT:  Thank you.

13      Mr. Emerson.

14          MR. EMERSON:  Your Honor, I have no other

15 information to present to the Court, other than what the

16 Court already has available to it in the presentence

17 report.

18      However at this time, my client would like to make

19 a brief statement to the Court, if she may.

20          THE COURT:  Okay.

21          DEFENDANT STANSKY:  Your Honor, I want to thank

22 you for taking the time for allowing me to read this.

23      Over my last 14 months of being incarcerated I

24 have had a lot of time to think about my actions.  My

25 past is not who I am but I am taking 100 percent

1  responsibility of my actions on the two counts of child

2  pornography.

3        I was so in love with someone that I was blinded

4  by what the person I thought he was interested in.  I was

5  unaware that the effect of this love brought on more of

6  my codependency issue that I already had.  This is the

7  reason that I want to take the codependency class, along

8  with others that will help me for the future.

9        I am asking for mercy in the Courts and not to

10  give me what the prosecution is asking for.  I have had a

11  lot of regrets in my life and I can't change my past, I

12  can only do this to better myself now for my future.

13        I am sorry, Your Honor.

14        I -- on 10-18 I gave my life fully to the Lord

15  Jesus Christ and I got baptized.  I try everyday to live

16  according to his will.  I am by far not perfect and I

17  will never be.  I can honestly say that during this

18  prison time and from this day forward I plan to work on

19  myself from the inside out.  I will use all my resources

20  available and truly put my entire being into all the

21  programs offered and that being all schooling, classes,

22  and, et cetera, that may be helpful to me coming out and

23  to being a productive citizen.

24        As I have said, I accept my responsibility.  But I

25  want to say I'm sorry.  And I know that means nothing

1  right now to everyone that I have hurt, but I am trying

2  to better myself in coming home and proving to myself

3  that they all know that I have changed.

4          I would love to take the MRT class also.  I need

5  to change a lot about myself and I'm starting first by

6  rethinking on the top of my list.

7          Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Court is required pursuant to 18 U.S. Code 3553(a)

10 to impose a sentence that is sufficient but not greater

11 than necessary to comply with the purposes of sentencing

12 identified in that statute.

13         In determining the particular sentence to be

14 imposed the Court has considered the United States

15 Sentencing Guidelines which promote uniformity in

16 sentencing and assists the Court in determining an

17 appropriate sentence, by weighing the basic nature of the

18 offense, as well as aggravating and mitigating factors.

19         Court has considered the plea agreement of each of

20 these defendants, the statements of the parties, the

21 victims, presentence report for each defendant, and

22 everything that has been discussed here in the courtroom

23 today.

24         After reviewing the presentence report for

25 Defendant Strom, the Court finds that the sentencing

1 guideline range of 720 months is correctly calculated,

2 based on a Total Offense Level of 43 and a Criminal

3 History Category of I.

4      Likewise, after reviewing the presentence report,

5 the Defendant Stansky, the Court finds that the

6 sentencing guideline range for her of 720 months is

7 correctly calculated, based on a Total Offense Level of

8 43 and Criminal History Category of I.

9      This offense involves Defendant Strom and Stansky

10 engaging in and recording sexual abuse of two children in

11 their care, minor victim one and minor victim two.

12      Both defendants would communicate about and share

13 recordings of the sexual abuse via various social media

14 and image sharing accounts.

15      Defendant Strom also communicated with

16 co-defendant Everman about recordings of the sexual abuse

17 of children, including sharing images of the sexual abuse

18 of minor victim one.

19      Now, a lot of things that I have to consider in

20 fashioning an appropriate sentence, especially in a case

21 like this.  One of those things is the guideline range,

22 and in evaluating the guideline range, in assessing the

23 overall seriousness of this offense, I think it's

24 important to note, and I will state for the record, I

25 think I can adjust this -- or address this part of my

1  sentencing discussion largely collectively for these two

2  defendants, because the calculations regarding the

3  offense level, specific offense characteristics,

4  adjustments for acceptance of responsibility, grouping of

5  counts, and all those things are mathematically identical

6  for both defendants.

7       But I do note that when you get into the specific

8  offense characteristics, there are points where the

9  specific underlying facts that support an offense

10 characteristic may be a little bit different between each

11 one of them in the way they're set forth in the

12 presentence report, and I've taken all that into account.

13      But the resulting numbers in this sense tell me

14 basically the same thing.  The adjusted offense level,

15 once you take into account acceptance of responsibility

16 for each of these defendants, mathematically would work

17 out to be an Offense Level of 50, but the sentencing

18 guidelines stop at Level 43 so -- and that results in a

19 life sentence under the sentencing guidelines.

20      In this case if the guideline offense levels

21 weren't capped at 43, these two would have ended up with

22 an offense level of 50.  So in that sense, you know,

23 they're sort of already getting some adjustment just

24 because the guidelines don't go that high.

25      In addition, they receive an additional benefit in

1  the sense that although the guidelines call for a life

2  sentence for each of them based on the offense level and

3  criminal history in this case, the statutes of conviction

4  have maximum terms of imprisonment which precluded the

5  life sentence so as a result, instead of having the

6  guideline range come out to recommend a life sentence,

7  you ended up with the 720 months as the guideline

8  sentence because that's all you can get if you run the

9  two sentences concurrent -- or excuse me, consecutive on

10 statutory maximums in looking at each of the two counts

11 of conviction.

12      So I'm supposed to consider this in fashioning an

13 appropriate sentence and what I take away from it is that

14 the resulting guideline sentence is in many ways already

15 lower than what this would have turned out to be if the

16 guidelines went up to higher offense levels and the

17 statutes permitted that, although obviously you can't get

18 above a life sentence for these types of offenses, so the

19 bottom line that would be a takeaway from that for me is

20 that it confirms the egregiousness of the conduct in this

21 case, which has been set forth in great detail in the

22 presentence report as well as in the Government's

23 presentation here.

24      So I think just suffice it to say for purposes of

25 the record here, in the event this is later reviewed by

1  some other Court, I will say that the conduct at issue in

2  this case is by far the most egregious and abhorrent that

3  I have ever encountered in my four and a half years doing

4  this job.

5         Just so everyone gets a sense of how bad I

6  perceive that to be, if the applicable statutes and the

7  Constitution permitted it, I would seriously consider

8  giving you two the electric chair for what you have done

9  in this case.  Now I can't do that.  But I am going to

10  craft a sentence that is appropriate under the law, but

11  that's how bad this is.

12        Now I think I'm going to for the most part try to

13  address each of these defendants separately as I work my

14  way through the sentencing factors under 18 U.S. Code

15  3553(a).

16        First factor that I am to consider there is the

17  nature and circumstances of the offense and the history

18  and characteristics of the defendant.  And I mean, I

19  don't know the extent to which I need to repeat all this

20  but the violence -- and that's what this is when you rape

21  and sodomize a child, it is violence that has been done

22  to the children who were victimized in this case,

23  specifically the victims of the counts of conviction, as

24  well as the eight-year-old who was also a child of

25  defendant Stansky, is just difficult to fathom.

1          I have in Mr. Strom's presentence report -- and

2     there's a lot of material in here, but just some of the

3     things that caught my attention, the various

4     conversations that were documented on Snapchat and

5     whatever other communication applications they were, he

6     and Ms. Stansky were using to communicate, no indications

7     of remorse or even hesitation, no acknowledgment that

8     these children are precious human beings who are being

9     raped and sodomized and having their innocence stolen

10    from them in ways that can never be repaired, can never

11    give that back to them.

12          You can hope and pray that somehow they're able to

13    break this cycle in their own lives.

14          But to just contemplate what they have been

15    through at your hands, Mr. Strom, and at your hands, Ms.

16    Stansky, as the mother of two of those, I can't

17    overemphasize how egregious and abhorrent this is.

18          Paragraph 74 of Mr. Strom's presentence report

19    notes that he was posting images of minor victim one on

20    this Mega.nz site online.  They were publically

21    accessible, no password required, so it's unclear how

22    broadly that that child's rape and exploitation had been

23    distributed and documented forever.

24          We don't have victim statements of grown people in

25    this case but in other cases, it's just over and over

1  victims of this kind of egregious behavior explaining

2  that it -- it mocks them and follows them and haunts them

3  forever.  They are constantly fearful of who knows.  When

4  they encounter people, who might know the things that

5  have happened to them.  Many of them recount stories

6  where people have found them out and shown up at their

7  house or pestered them with phone calls and emails and

8  taunts.

9       Other offenders seeking them out thinking that

10  they're probably easy or willing participants in this

11  stuff in the future.  They need mental health treatment

12  and therapy.  Some aren't even able to get out of the

13  house.  The consequences of these sorts of offenses to

14  many of the victims in general just are lifelong.

15       And you understand that, Mr. Strom.  You were that

16  kind of victim.  I have read about that here in your

17  presentence report and related materials.  You know what

18  that has done to you.  And yet you continue and did it to

19  others.  You magnified it beyond yourself to three other

20  people.

21       Paragraph 77 of Strom's presentence report notes

22  photos of Strom putting his penis in the mouth of a

23  two-year-old, minor victim two, in his image gallery.

24  And then is the heartless discussions of the rape of

25  minor victim two that is set forth in paragraph 96 from

1  Mr. Strom's presentence report that is relevant to both

2  victims.

3       I will refer to it in Ms. Stansky's presentence

4  report a bit when I get more focussed on her but it's the

5  same thing:  No remorse, callous, cold, calculated, no

6  thought whatsoever to the fact that these are innocent,

7  helpless children, Stansky's own children in some cases,

8  although minor victim two was not.

9       These are people that you protect in the world.

10 Grown people protect children.

11      Mr. Strom, strong, grown, adult men protect women

12 and children and they do not victimize them.

13      Those conversations continue to be documented on

14 through the succeeding paragraphs of the presentence

15 report in Mr. Strom's case, all the way over through

16 paragraph at least 103, and I could go on.  I think the

17 Government has done a good job of recounting a lot of the

18 key points on here so I don't feel the need to focus on

19 all those details.

20      I don't think any of it that I have seen is

21 uncontested or any of it I have heard strikes me as

22 inconsistent with what is in the presentence report.  So

23 I think the egregiousness and abhorrence of these

24 offenses is apparent.

25      I'm also supposed to consider the history and

1  characteristics of the defendant.

2       And, Mr. Strom, in your case the most -- some of

3  the most obvious components of that involve your own

4  upbringing.  I acknowledge that that itself is egregious

5  and, you know, it hurts my spirit to hear of anybody

6  going through that sort of stuff, so when I read the

7  materials in the presentence report about all the things

8  that documented what you went through, no one should have

9  had to do that and I don't doubt how that has influenced

10 your life, your decisionmaking, how those things might

11 have haunted you.

12      Possibly, you know, at some level you feel trapped

13 or enslaved by it but at some point someone has to put a

14 stop to it.  Someone has to have the courage to step up

15 and say, Not again.  I'm not going to curse another

16 generation because of what I went through.  You failed to

17 do that so the task falls to me.  And I am going to see

18 that that task gets accomplished here today.

19      Second factor that I'm supposed to consider is the

20 need for the sentence imposed to reflect the seriousness

21 of the offense, promote respect for the law, and provide

22 just punishment.  I don't think I need to reiterate in

23 the details of how serious these offenses were.  I

24 already said plenty about that.  But one of the things

25 that I tend to do, particularly in cases involving things

1  like child pornography and related offenses, is go to the

2  statute itself and sort of contemplate the person and the

3  activity that Congress appears to me to have had in mind

4  as it defines the various ends of the sentencing spectrum

5  that is authorized for the offense.

6      So the convictions here arise under 18 U.S. Code,

7  Section 2251, in particular subparagraph (a).  These are

8  sometimes somewhat tortured in trying to piece these

9  together to suit the offenses at hand but I will try to

10  paint this out here, that that statutory section

11  criminalizes the activities of any person who basically

12  uses, entices, or coerces a minor to engage in sexually

13  explicit conduct for the purpose of producing a visual

14  depiction of that conduct or transmitting it, if it's

15  done with the requisite mental states regarding intent

16  regarding interstate commerce.  That's kind of the

17  shortened version of it.

18      So on the one hand of the spectrum this statute

19  gets -- captures people who has a minor assist of some

20  other person to engage in this sexually explicit conduct

21  or even transport -- excuse me, transporting a minor for

22  that minor to engage in sexually explicit conduct, so

23  there's ways that this statute can be violated that are I

24  think far less egregious than what happened here.

25      You know, what this conduct smacks of to me is

1  basically the intent to rape and molest children and

2  document it on photos and videos, sort of as an add on to

3  it.  I think that the statute contemplates much more

4  minimal participation in this offense and much less

5  egregious conduct.

6       There's a lot less egregious conduct and sexually

7  explicit conduct beyond the outright rape and

8  sodomization of children repeatedly, as has been

9  established in the counts of conviction in this case.

10       Here we have on the one hand a mother of some of

11  these victims, and on the other hand, someone who you

12  basically have these -- all these children in the house,

13  you're overseeing them, someone's left them within your

14  oversight, custody or control, and there are even these

15  contrived plans to do these egregious things to these

16  little children at terribly young ages, even to the point

17  of figuring out how to keep them quiet while the event is

18  occurring I think is aggravated by the age of the

19  children, the circumstances where there is no one else in

20  many cases who's even supposed to care about them or be

21  available to help them.  They are isolated, helpless

22  people.

23       One person, minor victim two's mother, who should

24  have been looking out for that child, was enticed away.

25  This is sophisticated, callous, purposeful but to me

1  represents the kind of activity that would be at the top

2  end of the sentencing spectrum for the kind of conduct

3  that is offered under this statute.

4      So I think that when Congress crafted the statute

5  like this, that the activity that is perpetrated by these

6  two defendants in this case would have been way up at the

7  top of the activity that Congress had in mind as they

8  codified this, and I think that speaks to the seriousness

9  of the offense, and it's sufficiently egregious in my

10 mind that it calls for a very high sentence in order to

11 recognize that, to be consistent with what Congress had

12 in view of the statute, as well as to promote respect for

13 the law.

14      And just to see that justice is done.  That's what

15 the just punishment component is.  I have to craft a

16 sentence that is just and see that justice is done.

17      This father who appeared on the video here made

18 the comment to the effect that if he had the ability to

19 reach these defendants -- I forget how he said it, but

20 basically sounded like he was going to chop them into

21 pieces or something and I understand that.

22      Our system, though, is built on the concept that

23 justice is done through the courts so that people don't

24 have the need hopefully to feel like they have to become

25 vigilantes and do something else to see that justice is

1  done.

2       And my encouragement to victims and the victims'

3  family members in these sorts of cases is that if you can

4  find it in your heart to forgive these people and put it

5  behind you, that is what is best for you.  Because when

6  you forgive them and set them free in your own minds, you

7  set yourself free.

8       But I understand that that means that you need to

9  trust that someone is going to see that justice is done

10  and retribution is handed out and that's my task and

11  that's what the law requires of me and what I am going to

12  see gets done.

13       Next factor is to afford adequate deterrence to

14  criminal conduct.  And I think we can accomplish that

15  with a sentence in line with the guidelines in this case.

16       The next factor is to protect the public from

17  further crimes of the defendant.  And in this case, the

18  activity, the conduct here, strikes me as such an absence

19  of moral, ethical awareness, such a lack of care and

20  concern for not just random people but the children,

21  sometimes your own family members, that it tells me that

22  that lack of moral compass, basically you forfeited your

23  right to walk around in a free society.  It is not safe.

24       Anyone who would do this, I have little hope can

25  ever change that.  You know, I hope that you can.  But I

10/19/2022     USA v. STROM     21-10068-1     75

1  have to judge this case based on the circumstances here

2  today.  And this is so egregious, so callous, so

3  uncaring, unremorseful, that I end up with a firm

4  conclusion that the need to protect the public from

5  further crimes of each of these defendants basically

6  extends for the duration of their life.

7       Finally, in this vein I'm supposed to craft a

8  sentence that will provide needed educational and

9  vocational training, medical care, and corrective

10 treatment.  I think that can be provided in a prison

11 setting and it will also be provided under the conditions

12 set forth in the presentence report for conditions of

13 release when and if they ultimately -- these defendants

14 ultimately begin a term of supervised release.

15      Those are my thoughts on sentencing on Mr. Strom

16 in particular, on a lot of the issues that are common to

17 both cases.

18      But to be clear, I want to circle back to Ms.

19 Stansky and make sure it is clear on the record what I am

20 doing here, which is giving individual attention to each

21 defendant, and so I'm going to take a few moments to do

22 that.  If it seems repetitive, I'm sorry but that's what

23 I need to do to make sure the record is clear on this.

24      Now going back to the nature and circumstances of

25 the offense in this case, pretty much hashed that out.

1  We talked about that in detail.  I mentioned it over and

2  over, and I don't see the need to rehash that, other than

3  to say that as the Government's explained it, as you can

4  read in the presentence report, this conduct was jointly

5  undertaken.  The overlap was considerable of both the

6  defendants and particularly as it applies to Ms. Stansky,

7  as we said before.

8       But highlight in particular for this sentencing

9  factor, the nature and circumstances of this offense that

10 are as egregious as anything to me is that minor victim

11 one and the other eight-year-old victim are your

12 children.  You sodomized your own children.  And made

13 films of that and talked about it with Strom here.  And

14 planned the stuff out.  And it's -- I can't imagine how

15 that could be but it highlights I think how extraordinary

16 the nature and circumstances of this offense are as

17 compared to even the normal -- I say "normal" but the

18 common child porn distribution cases that we get here

19 where typically they're trading images and stuff.

20      But, you know, making it and generating that with

21 your own family members is exceedingly difficult to

22 understand and I think is very egregious conduct.

23      Now I'll note for both of these defendants that

24 each of them have a criminal history score of zero.  No

25 scorable criminal history.  In fact, when I look at both

1  these PSRs, I don't think there's even any offenses

2  listed here.

3          Let me double-check.

4          All right.  Mr. Strom did have a couple of

5  basically traffic matters listed under the Other Arrests

6  section, and then he had a Missouri event that is

7  directly related to the instant offense so that really

8  doesn't count separate and apart.  So I'm aware that each

9  of these defendants has a criminal history score of zero

10  and really no noteworthy criminal history at all.

11          I'm also aware that that is not uncommon in these

12  kinds of offenses.  I don't know why it is but it just

13  happens that a lot of this stuff goes under the radar

14  until people get caught and then the offense -- the

15  sentences many times are quite lengthy, and so you go

16  from once you get caught, you kind of get taken out of

17  society, and so it's not unusual to have someone with no

18  other criminal history.

19          One of the things that puzzles me here in the

20  defendant's own -- talking about Defendant Stansky's

21  history and characteristics, and I've gone through stuff

22  about Mr. Strom.  Her background to me appears not nearly

23  so egregious as what Mr. Strom's suffered.

24          She complains about verbal abuse, friction with

25  people, people in parental roles in her house and things

1  like that.  But nothing that helped me understand how she

2  got to doing the things that she was doing here, except I

3  note in one -- in paragraph 165 of the presentence report

4  it says -- regarding the alleged sexual abuse allegations

5  against the defendant's grandfather when she was a child,

6  Stansky stated she received some sort of unknown

7  counseling.  And that is what I was just going back

8  through this report for a few moments looking for.

9        Where is that -- where are those alleged

10 allegations if they're in there, because I didn't -- I

11 don't see that?

12       Is that in this presentence report?  And if it's

13 not, what's the story there?

14       I'm supposed to consider the history and

15 characteristics of the defendant, so that sticks out to

16 me as something relevant.

17       Does anyone know?

18       Mr. Emerson, do you know what I'm talking about?

19        MR. EMERSON:  Your Honor, I have just spoke with

20 my client.  I guess I have a question for the Court, just

21 to clarify.

22       She told me that she did discuss this during her

23 presentence interview so I guess my question is, is the

24 concern here that what she discussed with US Probation,

25 is there a question whether that happened?

1        Or is it just that it's not appearing in the

2   presentence report prepared by probation?

3        THE COURT:  My question is that I don't see

4   information in here that explains it to me.

5        I am supposed to consider everything about a

6   defendant in fashioning an appropriate sentence,

7   including the history and characteristics of that

8   defendant, and I'm pointing out that my review of

9   personal history with Stansky doesn't show me the sorts

10  of things that I -- that help put context on how she

11  ended up doing this stuff.

12       Like at least with Mr. Strom I understand that he

13  was abused egregiously as a child.  And I've told you

14  what I think about that as an excuse for the conduct here

15  but, nevertheless, the record reflects that I am aware of

16  it and I have considered it.

17       And so the only thing that stands out to me from

18  Ms. Stansky's history that is sort of I guess abnormal in

19  the sense of the conduct here is the statement in

20  16 -- paragraph 165 about alleged sexual abuse

21  allegations regarding her grandfather, but then I can't

22  find anything else in here that tells me what those

23  allegations were.

24       MR. EMERSON:  Could you give me just one more

25  brief moment with my client then, Your Honor?

1              MR. HART:  Your Honor, I may -- I may be able to

2    answer that.

3              My memory, and I have been trying to find it here,

4    is that in a draft version of the presentence report

5    there is discussion of this, and in communication with I

6    believe Jodi Stansky, the defendant's mother, she noted

7    that these were unfounded.  They were determined to be

8    unfounded allegations.  And so that part was removed

9    since there was indication it was unfounded.

10             Apparently this portion remained in the --

11   paragraph 165 remained in the PSR that the Court has.

12             I'm trying to find that prior paragraph, and if

13   you give me a moment, I'll track it down.  But my

14   understanding and my memory is that it was identified as

15   having been an unfounded allegation, but one moment.

16             And did it involve even her or somebody else?

17             One second, Your Honor.  Well, maybe more than one

18   second.

19             THE COURT:  Well, the defendant -- I'm giving

20   the defendant a chance to explain it if she wants to.

21   So --

22             MR. EMERSON:  Your Honor, if I can have a moment

23   with her, Your Honor.

24             THE COURT:  Go ahead.

25             [Sotto voce discussion had.]

1          MR. EMERSON:  Your Honor, after speaking with my

2   client, her recollection of the conversation with

3   probation is she recalls going to counseling as a child

4   but she doesn't specifically remember what for.

5          She recalls a later conversation with her mother

6   and her grandmother where the question was asked of the

7   defendant whether her grandfather had in any way sexually

8   assaulted her, but that she doesn't remember anything

9   specific.  All she recalls is going to counseling -- is

10  that she was placed in counseling at a young age for some

11  reason.  She does not specifically recall that reason.

12          THE COURT:  Okay.  Then in continuing my

13  discussion of sentencing, I don't see anything that

14  stands out to me in the history and background of this

15  defendant that even begins to provide explanation or

16  justification for the kind of activities that occurred in

17  this case with these offenses.

18          So I further note in evaluating her conduct in

19  this case that the presentence report documents efforts

20  to basically obstruct justice in this case by suggesting

21  that her conduct was caused by threats to her life,

22  physical wellbeing by Defendant Strom while she

23  ultimately admits in her prison writings that that was

24  false.  And it's difficult to assess what the

25  consequences were in the case, as we know it appears --

1  there is indication that some evidence might have been

2  destroyed as a result of some of the delays in the case,

3  particularly I think regarding Ms. Duvall, which was

4  never recovered.

5       I'm not contemplating any sort of overt

6  obstruction enhancement but in what I consider the nature

7  and circumstances of the offense, and her history and

8  characteristics, particularly in relation to this case, I

9  note that her acceptance of responsibility comes late in

10 the case and, in the meantime, she was lying and

11 obfuscating to avoid responsibility and minimize her

12 culpability in the case.

13      Continuing to the other factors, like description

14 on 3553(a)(2) factors that I made for Mr. Strom apply

15 equally to this defendant regarding the seriousness of

16 the offense, promoting respect for the law, providing

17 just punishment, adequate deterrence, protecting the

18 public, once again, I'll reiterate here, Ms. Stansky's

19 conduct is no less egregious than that of Mr. Strom in

20 this case.

21      She was encouraging him in some cases,

22 particularly with respect to the rape and molestation of

23 minor victim two.  That is well-documented in the

24 presentence report.  That reflects a lack of respect for

25 the law, more or less, ethics, care about other people

1  that I don't think that the mere passage of time is going

2  to fix, and so I think the protection -- protecting the

3  public from further crimes of this defendant factor is

4  just as strong with her as it is with Mr. Strom.

5          So when I take all this into account then with

6  respect to Mr. Strom, after considering the previously

7  stated factors, the advisory sentencing guidelines, the

8  nature and circumstances of the offense, and defendant's

9  history and characteristics, the Court intends to

10 sentence this defendant to a term of 360 months on each

11 of Counts 1 and 2, with said terms to run consecutively.

12 And this term will be followed by 15 years of supervised

13 release.

14         I believe that's appropriate.  This gentleman

15 would have gotten a life sentence under the guidelines if

16 the law and the statutes permitted it.  This is about as

17 close as I can get to it by keeping them under

18 supervision for a substantial amount of time.

19         If he gets out, I think 15 years following release

20 is appropriate, given the duration of the underlying

21 sentence.

22         I believe that sentence is sufficient but not

23 greater than necessary to reflect the seriousness of the

24 offense, promote respect for the law, and provide just

25 punishment, and that it should afford adequate deterrence

1  to criminal conduct and protect the public from further

2  crimes of this defendant.

3         The supervised release term, in addition to the

4  imprisonment sentence, will allow the defendant the

5  opportunity to receive correctional treatment in an

6  effective manner, and assist with community

7  reintegration.

8         Court intends to order special assessment of $100

9  on each of Counts 1 and 2, for a total special assessment

10  of $200 to the Crime Victims Fund.

11         The defendant's subject to the provisions of the

12  Justice For Victims of Trafficking Act of 2015, in

13  addition to the special assessment imposed under Section

14  3013 the Court shall assess an amount of $5,000 per count

15  on any non-indigent person.

16         Court finds the defendant is indigent and waives

17  the JVTA Assessment.

18         The Court does not intend to impose a fine due to

19  the defendant's inability to pay.  And the Government's

20  not requesting a fine.

21         The defendant's further subject to the provisions

22  of the Amy, Vicky and Andy Child Pornography Assistance

23  Act which applies to offenses occurring on or after

24  December 7th, 2018.

25         The provision instructs the Court shall assess not

1  more than $5,000 per count of any person convicted of a

2  child pornography production offense, such as the one in

3  this case.

4          Court finds that given the nature and

5  circumstances of the defendant's offense, to promote

6  respect for the law and to deter future criminal conduct,

7  and protect the community from further crimes of the

8  defendant, an assessment of $10,000 on each count is

9  appropriate, for a total of a $20,000 on the Amy, Vicky

10 and Andy Child Pornography Assistance Act.

11         Restitution is required in this case but as stated

12 earlier, we're going to bifurcate that, take that up

13 later.

14         Court also intends to order forfeiture of the

15 Samsung Galaxy S21 smartphone outlined in the preliminary

16 order of forfeiture filed by the Court on August 18th,

17 2022.

18         The Court intends to impose the mandatory and

19 standard conditions adopted by this Court, as well as the

20 special conditions of supervision -- or those mandatory

21 and special conditions as set forth in Part D of the

22 presentence report.

23         The financial conditions restricting new credit

24 charges or accounts, and providing release of information

25 forms to the probation office to access financial

1  information is necessary to insure restitution is paid to

2  the victims, and to protect the public from further

3  crimes of this defendant.

4        The defendant has been diagnosed with obsessive

5  compulsive disorder and ADHD.  It's noted in the

6  evaluation of Dr. Blanchard that although the defendant

7  denies current symptoms consistent with a diagnosis of

8  PTSD, it is evident that his childhood still has a

9  profound and dysfunctional effect on his functioning.

10       Special condition requiring mental health

11  treatment will allow the defendant to receive counseling

12  to address mental health issues and provide the defendant

13  with needed medical care.

14       Further, this may include a psychosexual

15  evaluation and a requirement to follow the

16  recommendations thereof.

17       With the history the Court has previously noted,

18  this type of treatment will be imperative to the

19  defendant's success not only during supervision but

20  during the remainder of the defendant's life.

21       The nature of the offense and history outlined in

22  the presentence report warrant a condition of no contact

23  with anyone under the age of 18.  This condition does not

24  lead to a greater deprivation of liberty than is

25  necessary to protect the public from further crimes of

1   the defendant.

2        The defendant shall have no contact with the

3   victims of these offenses, minor victim one, and minor

4   victim two.  Nor shall he have any contact with the

5   eight-year-old victim in this case.

6        This condition will afford adequate deterrence to

7   criminal conduct and protect the public from further

8   crimes of the defendant.

9        And I'm also going to extend that restriction on

10  contact with the victims to apply during his term of

11  imprisonment.

12       In *United States versus Grigsby*, 854 Federal

13  Appendix 249, Tenth Circuit, (2021), the Tenth Circuit

14  acknowledges this is a standalone no contact order and it

15  is some of the five things appropriate in this case.

16  It's going to -- ultimately I'll apply with both

17  defendants but Tenth Circuit has held that sort of

18  restriction is a form of civil injunction pursuant to the

19  District Court's ancillary jurisdiction, and I apply that

20  in this case to Defendant Strom as I've described here.

21       So the no contact will apply not only once he gets

22  out on supervision but while he's incarcerated.

23       Condition allowing searches of the defendant's

24  person and property is appropriate to assist the

25  probation office to verify the defendant's compliance

1  with his conditions of supervision, to ensure adequate

2  deterrence to criminal conduct, and protect the public

3  from further crimes of the defendant.  Search condition

4  is therefore appropriate.

5          The defendant has a history of abusing illegal

6  substances such as methamphetamine, a narcotic

7  medication.  The defendant's participation in substance

8  abuse treatment program with abstention from alcohol

9  during the term of supervision will assist the defendant

10 in refraining from the use of illegal substances during

11 the term of supervision, and it will provide him with

12 needed medical care.

13         Special computer crime conditions are appropriate

14 in this case and will allow the U.S. Probation Office to

15 monitor the defendant's use of any computer.

16         These conditions will also meet the sentencing

17 factors at 3553(a)(1) and (a)(2) C regarding the nature

18 and circumstances of the offense, and the need to protect

19 the public from further crimes of the defendant.

20         The defendant is presently in custody.  Therefore,

21 voluntary surrender is not appropriate.

22         However, the Court will, at defendant's request,

23 recommend designation to FCI Marianna for the Defendant

24 Strom to participate in vocational activities and

25 training there if -- assuming the BOP thinks it is

1  appropriate given the duration of his sentence.

2        Any objections on sentence for Defendant Strom?

3        MS. GORDON:  No, Your Honor.  Thank you.

4        MR. FREUND:  Your Honor, given the length of

5  sentence you've imposed, the Bureau's security

6  classification and designation program statement will

7  most likely result in Dustin going to a USP, so we would

8  ask you to amend the recommendation that if he is not

9  designated to Marianna, that he go to USP Tucson.  They

10  also have vocational training programs very similar to

11  Marianna and they also have the sex offender treatment

12  program.

13        THE COURT:  Very well.  I'll make that

14  recommendation.

15        All right.  Mr. Strom will rise for imposition of

16  sentence.

17        Court determines that the Presentence

18  Investigation Report and previously stated findings are

19  accurate and orders those findings incorporated in the

20  following sentence:

21        Pursuant to the Sentencing Reform Act of 1984, it

22  is the judgment of the Court that the defendant, Dustin

23  Kenneth Strom, is hereby sentenced to the custody of the

24  Bureau of Prisons for a term of 360 months on each of

25  Counts 1 and 2 of the superseding indictment.  These two

1    counts to run consecutively, for a controlling term of

2    720 months.

3           This term of imprisonment shall be followed by

4    five years of supervised release -- excuse me, 15 years

5    of supervised release.

6           Within 72 hours of release from the custody of the

7    Bureau of Prisons, the defendant shall report to the U.S.

8    Probation Office in the district in which he is released.

9           While on supervised release the defendant shall

10   comply with the mandatory and standard conditions adopted

11   by this Court, and the special conditions of supervision

12   as set forth in Part D of the presentence report.

13          It's ordered the defendant shall pay the United

14   States a special assessment totalling $200 to the Crime

15   Victims Fund.

16          Court waives the JVTA Assessment.

17          Total of $20,000 AVAA assessment is imposed.

18          Payments of all assessments imposed are due

19   immediately and may be satisfied while in Bureau of

20   Prisons' custody.

21          Imposition of a fine is waived.

22          The preliminary order of forfeiture is made final

23   as to this defendant and shall be incorporated in the

24   judgment.

25          Both the Government and defendant are advised as

1  to their respective rights to appeal this sentence and

2  conviction.  An appeal taken from this sentence is

3  subject to 18 US Code, Section 3742, and subject to any

4  waiver in the plea agreement in this case.

5       The defendant is advised it is your right to

6  appeal the conviction and sentence but only to the extent

7  that you have not waived that right in your plea

8  agreement.  You also can lose your right to appeal if you

9  do not timely file a notice of appeal in the District

10  Court.

11       Rule 4(b) of the Federal Rules of Criminal

12  Procedure gives you 14 days after the entry of judgment

13  to file a notice of appeal.  If you so request, the Clerk

14  of the Court shall immediately prepare and file a notice

15  of appeal on your behalf.

16       If you're unable to pay the costs of an appeal,

17  you have the right to apply for leave to appeal in forma

18  pauperis.

19       Defendant's remanded to the custody of the United

20  States Marshal Service pending designation by the Federal

21  Bureau of Prisons.

22       And I will make the recommendation to FCI

23  Marianna.  And, alternatively, to USP Tucson at the

24  defendant's request.

25       Does the Government have a motion on remaining

1  counts with respect to this defendant?

2          MS. GORDON:  Thank you, Your Honor.

3          As to this defendant the Government requests to

4  dismiss the remaining counts of the indictment.

5  Superseding indictment.

6          THE COURT:  And are there any counts remaining

7  in the original indictment?

8          Is everything else to be dismissed with respect to

9  this defendant basically?

10          MS. GORDON:  It's all in the superseding

11  indictment, Your Honor, yes.

12          THE COURT:  All right.  Remaining counts as

13  against this defendant in the superseding indictment and

14  any other charging documents still live in this case are

15  dismissed.

16          As I said earlier, I am holding open the issue of

17  restitution.  We'll take that up in a separate

18  proceeding.  That will be held on Thursday, January 5th,

19  2023 at 9:30 a.m.

20          Is there anything else with respect to this

21  defendant?

22          MS. GORDON:  No, Your Honor.  Thank you.

23          THE COURT:  Okay.  We'll just let him sit down

24  while I finish with the other defendant, Ms. Stansky.

25          All right.  Turning now to Defendant Stansky, once

1  again, after considering the previously stated factors,

2  the advisory sentencing guidelines, the nature and

3  circumstances of the offense, and the defendant's history

4  and characteristics, the Court intends to sentence this

5  defendant to a term of 360 months on each of Counts 1 and

6  2, with said terms to run consecutively.  This term will

7  likewise be followed by 15 years of supervised release.

8          Again, this offense called for a life sentence

9  under the guidelines.  It is limited by statute to the

10 sentence I have imposed as far as custody.

11         I think 15 years of supervised release reflects

12 the fact that if a person then gets out, with the kind of

13 offenses that occurred in this case, 15 years provides

14 sufficient opportunity, especially given the length of

15 the underlying sentence, to ensure that that conduct is

16 not likely to recur.

17         Court believes that such a sentence is sufficient

18 but not greater than necessary to reflect the seriousness

19 of the offense, promote respect for the law, and to

20 provide just punishment, and it should afford adequate

21 deterrence to criminal conduct and protect the public

22 from further crimes of the defendant.

23         Supervised release term, in addition to the

24 imprisonment sentence, will allow the defendant the

25 opportunity to receive correctional treatment in an

1  effective manner, and assist with community

2  reintegration.

3       Court intends to order a special assessment of

4  $100 on each of Counts 1 and 2, for a total special

5  assessment of $200 to the Crime Victims Fund.

6       The defendant is subject to the provisions of the

7  Justice For Victims of Trafficking Act.

8       In addition to the special assessment imposed

9  under 3013, the Court shall assess an amount of $5,000

10 per count to any non-indigent person.

11      The Court finds this defendant is indigent based

12 on the information in the presentence report, and waives

13 the JVTA Assessment.

14      Court does not intend to impose a fine due to

15 defendant's inability to pay.  Government's also not

16 requesting a fine.

17      The defendant's further subject to the provisions

18 of the Amy, Vicky and Andy Child Pornography Assistance

19 Act of up to $50,000 per count.  After considering the

20 factors under 18 U.S. Code 3553(a) and 3572, the Court

21 finds that under -- given the nature and circumstances of

22 the defendant's offense, in order to promote respect for

23 the law, to deter future criminal conduct, and protect

24 the public from further crimes of this defendant, an

25 assessment of $10,000 on each of Counts 1 and 2 is

1  appropriate, for a total of $20,000.

2          Restitution is required and will be taken up in

3  that hearing on January 5th.

4          Court also intends to order forfeiture of the

5  Samsung Galaxy S21 smartphone outlined in the preliminary

6  order of forfeiture filed by the Court on August 18th,

7  2022.

8          The Court intends to impose the mandatory and

9  special conditions of supervision as set forth in Part D

10 of the presentence report, as well as the standard

11 conditions adopted by this Court.

12         Financial conditions restricting new credit card

13 charges or accounts, and providing release of information

14 forms to U.S. Probation Office to access financial

15 information is necessary to ensure restitution is paid to

16 the victims, and to protect the public from further

17 crimes of this defendant.

18         This defendant has been diagnosed with ADHD,

19 anxiety, depression, and has a purported history of

20 mental health history.  Special condition of mental

21 health treatment will allow the defendant to receive

22 counseling to address mental health issues and provide

23 the defendant with needed medical care.

24         Further, this may include a psychosexual

25 evaluation and requirement to follow the recommendations

1  of that evaluation.

2       With the history the Court has previously noted

3  this type of treatment will be imperative to the

4  defendant's success, not only during the term of

5  supervision but also during the remainder of her life.

6       The nature of the offense and history outlined in

7  the presentence report warrant a condition for no contact

8  with anyone under the age of 18.  This condition is not

9  made to a greater deprivation of liberty, but is

10 necessary to protect the public from future crimes of the

11 defendant, in accordance with 18 U.S. Code 3553(a).

12      The defendant shall have no contact with the

13 victims of these offenses, minor victim one and minor

14 victim two.  Or with the eight-year-old victim.

15      This condition will afford adequate deterrence to

16 criminal conduct and protect the public from further

17 crimes of the defendant.

18      I also observe that in this case.  The no contact

19 provisions both as to persons under 18, as well as to the

20 specific victims in this case, involve this defendant's

21 children.

22      I don't know where we are, if anywhere, in the

23 process of terminating parental rights or if that is even

24 being pursued but I know that in the context of

25 fundamental rights and liberty interest, the Tenth

1  Circuit Court of Appeals has said that conditions can be

2  imposed that infringe on those if there is a compelling

3  circumstances and if they're based on particularized

4  findings in the case.

5          And I think the record here supports the

6  imposition of these restrictions as to Defendant

7  Stansky's children, certainly until they reach the age of

8  majority.

9          So I think the way I would handle that, first of

10 all, I think there are compelling circumstances here.

11 This mother sodomized her own children and encouraged her

12 boyfriend to be involved in that sort of activity and

13 generated child pornography.  Those are compelling

14 circumstances to the greatest degree.

15         And I think I made findings throughout this

16 sentencing on specific facts that are relevant to that

17 and we had information from the Government about forensic

18 interviews with the eight year old child and in the

19 Victim Impact Statement submitted by Ms. Angela Meyer

20 with regard to minor victim one, one of the things that I

21 didn't go over earlier but is appropriate now, she voiced

22 considerable concern about how minor victim one views

23 Mr. Strom as the person that hurt him and who did all

24 these things to him, but he harbors a very different view

25 toward Mrs. Stansky.

1           And the letter from Mrs. Meyer observes that minor

2    victim one has been in the custody for some of the time,

3    I don't -- I got the impression that maybe there was

4    change there, he is no longer in the custody of Ms.

5    Stansky's mother, but that in that environment minor

6    victim one, has received information probably from Ms.

7    Stansky's mother sort of mitigates Ms. Stansky's role

8    here or culpability, that he doesn't see her as being

9    someone who hurt him and really perpetrated these crimes

10   against him but he sees her -- Ms. Stansky as basically

11   innocent of that.

12          And if that's his impression, I would be

13   particularly concerned about that.

14          There is nothing wrong with, you know, a parent

15   making amends for things done in the past and trying to

16   repair that relationship in due time, particularly once

17   the child reaches adulthood, but to the extent that minor

18   victim one in particular has, you know, a totally, you

19   know, incorrect view of what's transpired here and how

20   his own mother has done egregious things to him, I think

21   that's concerning and anything that would allow that sort

22   of misunderstanding, deception, whatever it is, to

23   continue in his life, seems to me that's not healthy.

24          He needs to understand that this was wrong, learn

25   to deal with it through counseling, therapy, the healing

1  over time and maturity and all those sorts of things, but

2  he doesn't need to be deceived about what's been done to

3  him.

4          So I think the facts particularly in his case

5  merit this sort of no contact even more and so I guess

6  what I want to do is say that the order for no contact

7  with the children is subject to being revisited as the

8  children reach the age of majority.

9          If they would consent to having that restriction

10 limited because they want to be able to have contact with

11 her once they reach the age of majority, I -- or if I'm

12 not -- well, maybe I'll still be here but by the time

13 they reach age 18, I will revisit that.

14         But up until then, I think it's appropriate.  And

15 I acknowledge that this is hitting on a fundamental

16 parental right, and I conclude that under the

17 circumstances and particular facts of this case it is

18 nevertheless appropriate.

19         And if I haven't made it clear, I am extending

20 this no contact order specifically to the custody

21 setting, just as I did with Mr. Strom.

22         This doesn't just apply in the supervised release

23 setting, this no contact order will extend to the time

24 that Ms. Stansky was serving her prison term.

25         I find that the condition allowing searches of the

1  defendant's person and property is appropriate to assist

2  the probation office to verify the defendant's compliance

3  with her conditions of supervision, to ensure adequate

4  deterrence to the criminal conduct, and protect the

5  public from further crimes of this defendant.

6          Special computer crimes condition is also

7  appropriate and will allow the probation office to

8  monitor the defendant's use of any computer.

9          These conditions will meet the sentencing factors

10 of 3553(a)(1) and (a)(2)(C) regarding the nature and

11 circumstances of the offense and the need for the

12 sentence to protect the public from further crimes of the

13 defendant.

14         This defendant is presently in custody.  Voluntary

15 surrender is not appropriate.

16         Any objections?

17         MS. GORDON:  No, Your Honor.  No objections from

18 the Government, Your Honor.

19         Thank you.

20         MR. EMERSON:  No objections.

21         THE COURT:  Very well.  The defendant will

22 rise -- Defendant Stansky will rise for imposition of

23 sentence.

24         The Court determines that the Presentence

25 Investigation Report and previously stated findings are

1  accurate, and orders those findings incorporated in the

2  following sentence:

3        Pursuant to the Sentencing Reform Act of 1984 it

4  is the judgment of the Court that the Defendant

5  Thommie-Lyn Stansky is hereby sentenced to the custody of

6  the Bureau of Prisons for a term of 360 months on each of

7  Counts 1 and 2 of the superseding indictment, each count

8  to run consecutively, for a total imprisonment term of

9  720 months.

10        This term of imprisonment shall be followed by 15

11  years' supervised release on each of Counts 1 and 2, to

12  run concurrently, for a controlling term of 15 years of

13  supervised release.

14        Within 72 hours of release from the custody of the

15  Bureau of Prisons, the defendant shall report to the U.S.

16  Probation Office in the district in which she is

17  released.

18        While on supervised release this defendant shall

19  comply with the mandatory and special conditions adopted

20  by this Court, and the special conditions of supervision

21  as set forth in Part D of the presentence report.

22        It is ordered the defendant shall pay the United

23  States a special assessment totalling $200 to the Crime

24  Victims Fund.

25        Court waives the JVTA assessment.

```
 1          Total of $20,000 AVAA assessment is imposed.

 2          Payments of all assessments imposed are due

 3 immediately and may be satisfied while in Bureau of

 4 Prisons' custody.

 5          Imposition of a fine is waived.

 6          Preliminary order of forfeiture is made final as

 7 to this defendant.  It shall be incorporated in the

 8 judgment.

 9          Both the Government and defendant are advised as

10 to their respective rights to appeal this sentence and

11 conviction.

12          An appeal taken from this sentence is subject to

13 18 U.S. Code, Section 3742, and subject to any waiver in

14 the plea agreement.

15          The defendant is advised it is your right to

16 appeal the conviction and sentence, but only to the

17 extent you have not waived that right in the plea

18 agreement.

19          You also can lose your right to appeal if you do

20 not timely file a notice of appeal in the District Court.

21          Rule 4(b) of the Federal Rules of Appellate

22 Procedure gives you 14 days after entry of judgment to

23 file a notice of appeal.  If you so request, the Clerk of

24 the Court shall immediately prepare and file a notice of

25 appeal on your behalf.  If you're unable to pay the costs
```

1  of an appeal, you have the right to apply for leave to

2  appeal in forma pauperis.

3        Defendant's remanded to the custody of the United

4  States Marshal pending designation by the Federal Bureau

5  of Prisons.

6        Does the Government have a motion on remaining

7  counts for Ms. Stansky?

8        MS. GORDON:  Yes, Your Honor.  The government

9  would move to dismiss the remaining counts of Ms. Stansky

10 in the superseding indictment.

11       THE COURT:  Motion is granted.

12       Anything else today?

13       MS. GORDON:  No, Your Honor.

14 Thank you.

15       THE COURT:  Court's in recess.

16       (Proceedings conclude at 4:40 p.m.)

17       *********************************************

18                 C E R T I F I C A T E

19       I, Jana L. McKinney, United States Court

20 Reporter in and for the District of Kansas, do hereby

21 certify:

22       That the above and foregoing proceedings were

23 taken by me at said time and place in stenotype;

24       That thereafter said proceedings were

25 transcribed under my discretion and supervision by means

1  of transcription, and that the above and foregoing

2  constitutes a full, true and correct transcript of

3  requested proceedings;

4           That I am a disinterested person to the said

5  action.

6           IN WITNESS WHEREOF, I hereto set my hand on

7  this, the 24th day of May, 2023.

8

9           s/ Jana L. McKinney
            Jana L. McKinney, RPR, CRR, CRC, RMR
10          United States Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                                              PAGE

3     REPORTER'S CERTIFICATE                   104

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25